**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

RASHEEDAH HEARD, as parent and natural
guardian of Minor I.A.,

　　　　　　　　Plaintiff,

　　　　　v.

CITY OF PLAINFIELD; PLAINFIELD
PUBLIC SCHOOL DISTRICT; PLAINFIELD
BOARD OF EDUCATION; RASHON K.
HASAN; KEVIN STANSBURY;
SHANIESHA EVANS; FRANK FUSCO;
TYRONE WILLIAMS; PLAINFIELD
POLICE DEPARTMENT; OFFICER
MICHAEL GORDON; JOHN DOES 1-10;
and JOHN DOES 11-20,

　　　　　　　　Defendants.

Case No. 2:24-cv-10293(BRM)(MAH)

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

　　　Before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) filed by Defendants Plainfield Public School District, Plainfield Board of Education

("BOE"), Superintendent Rashon K. Hasan, Principal Kevin Stansbury ("Principal Stansbury"),

Vice Principal Shaniesha Evans ("Vice Principal Evans"), Vice Principal Frank Fusco ("Vice

Principal Fusco"), and Tyrone Williams[1] ("Director Williams") (collectively, the "School

Defendants") (ECF No. 36), and City of Plainfield, Plainfield Police Department ("PPD"), and

Plainfield Police Officer Michael Gordon ("Officer Gordon") (together with the PPD, "Police

Defendants") (collectively, "City Defendants") (ECF No. 37), respectively. Plaintiff Rasheeda

---

[1] Tyrone Williams is the Director/Supervisor of Security. (ECF No. 35 at 4.)

Heard filed oppositions to the Motions.[2] (ECF Nos. 38 and 44.) School Defendants filed a reply.[3] (ECF No. 45.) Having reviewed and considered the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, School Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and City Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

### A.    Factual Background

For the purpose of these motions to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation modified).

This case arises from the alleged detention, search, arrest, and prosecution of a fifteen-year-old student, I.A., by Plainfield school officials and Plainfield police officers.[4] (Am. Compl. (ECF No. 35) ¶ 33.) On November 9, 2022, after a concerned parent called Plainfield High School to report that someone had brought a firearm into the school two days earlier, School Defendants ordered a lockdown of the school building. (*Id.* ¶ 35.) School Defendants, including Principal

---

[2] Plaintiff Rasheedah Heard filed this action on behalf of her minor child, I.A.

[3] City Defendants did not file a reply.

[4] The BOE is the "ultimate policymaking authority for all officially adopted policies, procedures, and disciplinary protocols implemented by [s]chool [d]istrict personnel, including all School Defendants . . . . [I]t is the entity legally responsible for the hiring, retention, supervision, [disciplining,] and training of Plainfield BOE" employees. (ECF No. 35 ¶ 69.)

Stansbury and Vice Principal Evans and Director Williams, oversaw the lockdown and subsequent investigation. (*Id.* ¶ 37.) During the investigation, a Plainfield School official contacted the PPD, and "PPD officers responded to [the school] shortly thereafter." (*Id.* ¶ 40.)

School Defendants identified C.A. as the student who allegedly brought the firearm to school and brought C.A. to the School Resource Officer's office, where they spoke with C.A. and searched C.A.'s bag. (*Id.* ¶¶ 39, 41, 42.) Ultimately, School Defendants and the PPD officers were "satisfied that C.A. was not in possession of a weapon" and concluded there was "no further threat to the students." (*Id.* ¶ 42.)

Later that day, "school security officers, including Director Williams and [School Resource Officer] Rodriguez, along with the PPD officers," stopped at the school cafeteria where they saw a group of students, including I.A., "passing bags." (*Id.* ¶ 43.) Plaintiff contends "[a]t all relevant times, I.A. was . . . engaged in normal, lawful behavior." (*Id.*) Nevertheless, school security and PPD officers removed I.A. from the cafeteria and took him to the School Resource Office ("SRO"), "where he was searched[,] aggressively handcuffed," and detained for several hours.[5] (*Id.* ¶ 45.) During his detention, I.A.'s parents were notified of his detainment. (*Id.* ¶ 47.) Eventually, "the Police Defendants, including [Officer] Gordon, uncuffed I.A. and allowed him to return to his parents." (*Id.* ¶ 50.) I.A. immediately ran to his parents but was "grabbed by PPD officers, formally arrested, and transported to PPD headquarters for processing." (*Id.* ¶ 52.) He was "subsequently charged with Obstructing the Administration of Law, in violation of N.J.S.A. 2C:29-1A, under Complaint Number: JC-2011-000034-2012" (the "Juvenile Complaint"). (*Id.* ¶ 54 (citation

---

[5] Plaintiff asserts that "prior to November 9, 2022, Defendants City [of Plainfield], [Plainfield Public] School District[,] and the BOE had received numerous complaints concerning the [allegedly] inappropriate and excessive use of authority by police officers and school security personnel, including the detention, search[,] and handcuffing of students without proper justification or parental notification within the district." (*Id.* at 70.)

modified).) The Juvenile Complaint was ultimately "dismissed in its entirety at I.A.'s first appearance for lack of evidence [as] there existed no probable cause to support I.A.'s arrest and/or prosecution for Obstructing the Administration of Law." (*Id.* ¶ 57).

Later that month, Vice Principal Fusco informed Plaintiff that I.A. was "being suspended based on the events of November 9, 2022." (*Id.* ¶ 57.) Although Plaintiff requested "a more detailed explanation as to why I.A. was being suspended [and] questioned why information about I.A. was being provided to alternative schools[,] [s]he never received [a] response." (*Id.* ¶ 58.) I.A. remained suspended from November 9, 2022, through February 27, 2023, while the BOE conducted an investigation. (*Id.* ¶ 63.)

Eventually, Plaintiff received a copy of a Plainfield Public Schools Incident Report (the "Report"), describing the events of November 9, 2022. (*Id.* ¶ 59.) The Report noted that I.A. "was found to have a knife in his backpack[,] was in the process of being released to his parents by PPD[,] and took off running before the release had been completed." (*Id.* ¶ 59.) According to the Report, the police placed I.A. in their custody and took him to PPD for processing before the "school suspended him for possessing the knife in his backpack." (*Id.*) By contrast, the Juvenile Complaint did not include a discovery of a knife "or that I.A. was found to be in possession of a knife." (*Id.* ¶ 60.) Additionally, the police never charged I.A. for possession of a knife based on the events of November 9, 2022. (*Id.*) Still, in February 2023, Plaintiff received a letter from then-Acting Superintendent of Schools Rashon K. Hasan on behalf of the BOE, noting "that the BOE's 'investigation determined that [I.A.] was in possession of a knife in his backpack at Plainfield High School on November 9, 2022.'" (*Id.* ¶ 64 (alteration in original).) I.A. was eventually "transferred out of the district to complete his education." (*Id.* ¶ 66.)

**B.  Procedural History**

On November 5, 2024, Plaintiff filed a ten-count Complaint, alleging several causes of action. (ECF No. 1.) On January 9, 2025, City Defendants filed their Answer. (ECF No. 23.) In accordance with this Court's judicial preferences, on February 5, 2025, School Defendants filed a pre-motion letter requesting a conference. (ECF No. 25.) On February 12, 2025, Plaintiff timely filed their response to the pre-motion letter. (ECF No. 28.) On February 26, 2025, the Court granted Plaintiff leave to amend their Complaint and ordered that "the Defendants may file a responsive pleading to any filed Amended Complaint within thirty . . . days of the filing of an Amended Complaint." (ECF No. 33.)

On April 25, 2025, Plaintiff filed her Amended Complaint, alleging the following causes of action against all defendants, except as to Count 2, which is only directed against the City of Plainfield, Plainfield Public School District, and the BOE: a Fourth Amendment claim under 42 U.S.C. § 1983 (Count 1); a negligent training and supervising claim under 42 U.S.C. § 1983 (Count 2); a Fourteenth Amendment violation of due Process claim under 42 U.S.C. § 1983 (Count 3); an Article I, Section I due process, Article I, Section 5 equal protection, and Article I Section 7 freedom from unreasonable searches and seizures claim under the New Jersey State Constitution and the New Jersey Civil Rights Act (Count 4); a false arrest and imprisonment claim (Count 5); a malicious prosecution claim (Count 6); an abuse of process claim (Count 7); a negligence claim

(Count 8); an intentional infliction of emotional distress ("IIED") claim (Count 9); and a negligent infliction of emotional distress claim (Count 10).[6] (ECF No. 35.)

On May 23, 2025, School Defendants filed their motion to dismiss. (School Def.'s Br. (ECF No. 36-1).) Four days later, City Defendants filed their motion to dismiss. (City Def.'s Br. (ECF No. 37-1).) On May 27, 2025, Plaintiff filed an objection letter, arguing that the Court should administratively terminate City Defendants' motion to dismiss for failure to file a pre-motion letter in accordance with the undersigned's judicial preferences or grant Plaintiff leave to further amend her Complaint should the Court allow the City Defendants' motion to proceed despite their failure to comport with the undersigned's judicial preferences.[7] (ECF No. 38.) Despite her objections, on

---

[6] Plaintiff lists ten separate counts and attempts to nest a civil rights conspiracy claim within Count 1. (ECF No. 35 ¶¶ 53, 87 ("[T]he School Defendants . . . orchestrated and conspired with the Police Defendants to formally—and falsely—arrest I.A. to cover up their unlawful and otherwise attempt to justify their unlawful detention and seizure of I.A., and to shield themselves from liability arising from their unconstitutional acts. . . . Defendants, individually and as a group, . . . participated and conspired with one another, under color of law, to deprive I.A. of his constitutional rights.").) However, nesting a civil rights conspiracy this way fails to comport with Fed. R. Civ. P. 10(b), so the Court will not construe it as a separate claim. *See Oaklyn Villas Urban Renewal LLC v. Borough of Oaklyn*, Case No. 22-03177, 2023 WL 2555467, at *4 (D.N.J. Mar. 17, 2023) ("A shotgun pleading can arise in . . . a complaint 'not separating into a different count each cause of action or claim for relief . . . .'" (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015))). If Plaintiff decides to file an amended complaint to bring a civil conspiracy claim against City Defendants and School Defendants, Plaintiff "shall make specific allegations under a separate count in order to avoid [a] potential improper shotgun pleading." *Samra Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.*, 768 F. Supp. 3d 661, 665, at *3 (D.N.J. 2025).

[7] Because the motions have been fully briefed, the Court will adjudicate the motions on the merits. However, given City Defendants' failure to comply with the Court's judicial preferences, the Court grants Plaintiff leave to further amend her Complaint. *See infra* IV. Accordingly, dismissals of Plaintiff's claims are without prejudice, except where the Court finds further amendment would be futile. *Bankwell Bank v. Bray Ent., Inc.*, Civ. A. No. 20-49, 2021 WL 211583, at *2 (D.N.J. Jan. 21, 2021) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.").

July 7, 2025, Plaintiff filed her opposition to both motions. (ECF No. 44.) On July 14, 2025, School Defendants filed their reply. (ECF No. 45.)

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the non-moving party. *Phillips*, 515 F.3d at 228. A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id*. "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment pursuant to Rule 56. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d, 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in

8

an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### B.  Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." *In re Burlington Coat Factory*, 114 F.3d at 1434 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996)). In the Third Circuit, courts may deny a motion for leave to amend "where it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (citation modified).

### III.  DECISION

School Defendants move to dismiss the Complaint in its entirety, arguing Plaintiff fails to state any claim for relief. (ECF No. 36-1.) City Defendants move to dismiss all counts but Count Three, arguing that Plaintiff fails to state any claim for relief.[8] (ECF No. 37-1.) The Court addresses each in turn.

### A.  Fourth Amendment Claim Under 42 U.S.C. § 1983 (Count 1)

School Defendants argue Plaintiff's Fourth Amendment claim is subject to dismissal because the search and seizure of I.A. was reasonable, and qualified immunity otherwise shields

---

[8] Throughout their motion to dismiss, City Defendants use "Police Defendants," presumably, to refer to a subset of defendants, but nowhere in their briefs have City Defendants defined the term. (*See, e.g.*, ECF No. 37-1 at 8 ("Here, Plaintiff fails to state a claim, and the Police Defendants are otherwise entitled to qualified immunity.").) Left with the task of deciphering what "Police Defendants" means, the Court construes "Police Defendants" to mean Defendants PPD and Officer Gordon.

School Defendants. (ECF No. 36-1 at 5–10.) It appears City Defendants make the same arguments.[9] (ECF No. 37-1 at 5–10.)

First, Plaintiff argues the traditional probable cause standard should govern instead of the reasonableness standard because the police were "actively involved" in the School Defendants' detainment and search of I.A. (*Id.* at 13.) According to Plaintiff, even if the Court were to adopt the reasonableness standard, the "reasons provided by the School Defendants fail to justify the search or seizure of I.A." (*Id.* at 14.) Further, Plaintiff contends "[t]he Police Defendants offer[ed] no identifiable grounds to support their alleged reasonableness in believing that the search and seizure of I.A. would turn up evidence of a violation." (*Id.* at 14.) Second, Plaintiff argues the Complaint sufficiently alleges school officials and police officers "coordinated I.A.'s arrest after he had been released to his parents" and that School Defendants engaged in "*post hoc* coordination to suppress or distort facts." (*Id.* at 16–1.) Third, Plaintiff argues that "forcibly detaining, handcuffing, and arresting a student without probable cause or even reasonable suspicion violates clearly established Fourth Amendment rights." (*Id.* at 19.)

### 1. 42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

---

[9] City Defendants' brief includes language responding to a supposed First Amendment claim, but Plaintiff never brought such a claim. (ECF No. 37-1 at 5 ("Count One of the Complaint sets forth Plaintiff's allegation that the City Defendants, through 'policies' or, more appropriately, agreed upon contractual terms, have violated Plaintiff's first amendment rights under the Petitions Clause. Specifically, Dobco alleges that the UCIA Defendants have retaliated against it for its exercise of the right to petition.").) As such, the Court will not address City Defendants' First Amendment argument.

> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States and, second, the alleged deprivation was

committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42,

48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The School Defendants and City Defendants do not contest that they were acting under the

color of state law; they only argue that they did not violate I.A.'s constitutional rights. As such,

for purposes of Plaintiff's Motion to Dismiss, the Court only analyzes whether I.A. states a claim

as to the alleged constitutional violations. *Lopez v. City of Plainfield*, No. 12-cv-4976, 2017 WL

370781, at *7 (D.N.J. Jan. 25, 2017) (turning to the various claims of constitutional violations

where the defendants did not contest that they were acting under the color of state law).

### 2.  Fourth Amendment

The "Fourth Amendment protects '[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures.'" *Shuman v. Penn Manor*

*Sch. Dist.*, 422 F.3d 141, 146–47 (3d Cir. 2005) (quoting U.S. Const. amend. IV). Under the Fourth

Amendment, a search "occurs when an expectation of privacy that society is prepared to consider

reasonable is infringed," *United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and a seizure occurs

when "a reasonable person would have believed that he was not free to leave." *Shuman ex rel.*

*Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 147 (3d. Cir. 2005).

The Fourteenth Amendment "extends this constitutional guarantee to searches and seizures

by . . . public school officials." *Id.* at 147 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985)).

"In the ordinary criminal case, arrest and detention of a suspect is reasonable if it is supported by

probable cause." *Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir. 2011) (citation omitted). By

11

contrast, searches and seizures in public schools fall under a "limited exception[]" and "depend simply on the reasonableness, under all the circumstances, of the search." *Shuman ex rel. Shertzer*, 422 F.3d at 147. Under this exception, a student search is reasonable if it is (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Specifically, in the Third Circuit, courts review whether a student seizure was reasonable in light of the circumstances by weighing the detention against the seriousness of the alleged misconduct. *See, e.g.*, *Shuman ex rel. Shertzer*, 422 F.3d at 149 (comparing the length and limitations imposed by the detention against the serious nature of the accusations against the student).

*T.L.O.* left unanswered whether the reasonableness test should apply to actions "conducted by school officials *in conjunction with* or at the behest of law enforcement agencies," 469 U.S. at 341 n.7 (emphasis added). The Third Circuit along with a majority of its sister circuits have yet to address this question. *But see Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1060 (8th Cir. 2002) ("*T.L.O.*'s reasonableness standard, not probable cause, applied when a school official searched a student *in conjunction with* a school liaison officer."); *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006) (applying "the [*T.L.O.*] reasonableness standard . . . to school seizures by law enforcement" despite a lack of conjunction with law enforcement).

However, *T.L.O.* and decisions from various courts of appeals extending the reasonableness standard to the school seizure context provide helpful guidance. Starting with *T.L.O.*, the Court embraced the reasonableness standard, in part, because it would "spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense."

469 U.S. at 343. Stated differently, *T.L.O.* was a pragmatic balancing of schools' interest in "maintain[ing] order" while preserving students' privacy interests. *Id.* Relatedly, when faced with the question of whether to adopt the reasonableness standard with regard to school seizures, various circuit courts have focused on the nexus between the lower reasonableness standard and "the ordering and direction of *teachers and administrators*," as well as the educational mission of schools itself. *See, e.g.*, *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995); *see also Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) ("In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives [the vice principal] was trying to achieve."). Given the "special consideration to the goals and responsibilities of our public schools," the reasonableness standard respects *T.L.O.*'s balancing of the school needs and student rights. *Shuman ex rel. Shertzer,* 422 F.3d at 148 (importing the reasonableness standard to school seizures).

However, when law enforcement—independent of school officials—initiate a seizure or search of a student at school, both law enforcement *and* school officials cannot avoid the higher probable cause standard just because school officials are jointly involved. *See Ferguson v. City of Charleston*, 532 U.S. 67, 83 n.20 (2001) (holding that a search by nurses at a public hospital did not fall under the special needs exception because of the "extensive entanglement" with law enforcement); *see also id.* at 88 (Kennedy, J., concurring) ("The traditional warrant and probable-cause requirements are waived in our ['special needs'] cases on the explicit assumption that the evidence obtained in the search is not intended to be used for law enforcement purposes.").[10]

_____

[10] Despite a body of non-binding authority deciding differently, the Court agrees with the various courts that have concluded that the balancing is necessarily different when law enforcement is substantially involved with school seizures or searches, requiring a higher standard of probable

Here, Plaintiff alleges the police were initially called to assist in an investigation of a "student who allegedly brought the firearm to the school two days earlier[,]" *i.e.*, C.A., and "School Defendants and PPD officers were satisfied that there was no further threat to the students" "after speaking with C.A. and searching C.A.'s bag[.]" (ECF No. 35 ¶¶ 40, 42.) Specifically, the Police Defendants were only called to address the potential danger of a firearm on school grounds and were not working at the direction of school officials when, after finding no threat, they searched and detained I.A. (*Id.*) Construing the Amended Complaint in the light most favorable to the Plaintiff then, *see Phillips*, 515 F.3d at 228, the Court finds that School Defendants did not make the independent and initial decision to "return[] to the cafeteria," "forcibly remove" *I.A.* from the cafeteria, or "search[] and aggressively handcuff" him. (ECF No. 35 ¶¶ 43, 45.) Consequently, the Court agrees with Plaintiff that the appropriate level of suspicion required here as to both the Police Defendants and School Defendants is probable cause. *Cf. Vassallo*, 591 F. Supp. 2d at 194.

As a threshold matter, unless there is an event that qualifies as a "search" or "seizure" as a constitutional matter, the Fourth Amendment is not implicated. *Grady v. North Carolina*, 575 U.S. 306, 310 (2015) (deciding that the state's monitoring program effected a Fourth Amendment search and remanding the case to allow the lower court to decide the ultimate question of the program's constitutionality). The Court must first decide whether the alleged "search" or "seizure" implicates Plaintiff's rights under the Fourth Amendment before turning to the question of whether Plaintiff's Fourth Amendment rights were violated. Plaintiff's Amended Complaint lists facts that

---

cause. *See M. v. Board of Ed. Ball-Chatham Community Unit School Dist. No. 5*, 429 F. Supp. 288, 292 (S.D. Ill. 1977) (holding that the probable cause standard is applicable at least where the police are involved in a search); *Picha v. Wielgos*, 410 F. Supp. 1214, 1219–21 (N.D. Ill. 1976) (same); *State v. Young*, 216 S.E.2d 586, 594 (G.A. 1975) (same); *but see Vassallo v. Lando*, 591 F. Supp. 2d 172, 193–94 (E.D.N.Y. 2008) (collecting cases where courts have applied the reasonableness standard articulated in *T.L.O.* to school seizures by law enforcement officers).

appear to show I.A. had been searched and seized within the meaning of the Fourth Amendment. As to search, Plaintiff states that I.A. "was searched" and School Defendants and Police Defendants "f[ound] no evidence," but that a letter from the BOE stated he was "in possession of a knife in his backpack." (ECF No. 35 ¶¶ 45, 46, 64.) Construing the facts in the light most favorable to Plaintiff, *Phillips*, 515 F.3d at 228, it appears that Plaintiff has sufficiently pled facts to show that School Defendants and Police Defendants searched I.A. within the meaning of the Fourth Amendment. *See Jacobsen*, 466 U.S. at 113; *Shuman ex rel. Shertzer*, 422 F.3d at 147. As to seizure, Plaintiff states that School Defendants and Police Defendants detained I.A. at the School Resource Officer's office for several hours, where he was kept handcuffed. (ECF No. 35 ¶¶ 46, 48.) Based on these alleged facts, it appears that I.A. was also seized within the meaning of the Fourth Amendment. Having found the Amended Complaint includes facts that raise a Fourth Amendment search and seizure claim, the Court must determine whether the search and seizure constituted a violation of I.A.'s Fourth Amendment Rights.

### a. Police Defendants' Search and Seizure of I.A.

First, applying the probable cause standard, the Court finds that Plaintiff's Amended Complaint states a claim as to both the Police Defendants' improper search and seizure of I.A. The Court will first address the search.

Here, because no "limited exception" applies to the Police Defendants' search of I.A., the search "require[d] either a warrant or probable cause." *Shuman ex rel. Shertzer*, 422 F.3d at 147. Because the police searched I.A. spontaneously, *i.e.*, without a warrant, they needed to have probable cause to justify their actions, but they did not. (ECF No. 35 ¶¶ 35, 36, 40, 42 (describing that the police presence at Plainfield High School was spurred by a report that a then-yet-to-be identified student had brought a firearm to the school).)

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *United States v. Lackey*, No. 20-2977, 2022 WL 313807, at *2 (3d Cir. 2022). As alleged in Plaintiff's Amended Complaint, PPD officers "purportedly noticed a group of students, including I.A., 'passing bags' to each other." While it is not wholly evident what "passing bags" means, Plaintiff goes on to say that I.A. was "engaged in normal . . . behavior." Therefore, construing the facts in the light most favorable to Plaintiff, as the Court must at the motion to dismiss stage, *Phillips*, 515 F.3d at 228, the Court understands "passing bags" to be nothing more than an innocuous activity, such as an exchange of backpacks. Even "considering all . . . the surrounding circumstances," Police Defendants could not conclude that there was a "substantial chance of criminal activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244, n.13 (2018)). Therefore, Plaintiff asserts facts sufficient to state a claim for violation of the Fourth Amendment under 42 U.S.C. § 1983 because merely witnessing some harmless activity alone is not enough to establish probable cause. *See D.C. v. Wesby*, 583 U.S. 48, 61 (2018).

Next, as to the Police Defendants' seizure of I.A., the Court finds that Plaintiff states a claim for violation of the Fourth Amendment under 42 U.S.C. § 1983. As with most warrantless searches, generally, when law enforcement seizes someone, they must have probable cause. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975) (noting that the United States Supreme Court has "never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant"). Within the seizure context, probable cause exists where "the facts and circumstances within [an officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (defendant) had committed or was committing an offense." *Gov't of Virgin Islands v. Hernandez*, 508 F.2d 712,

715 (3d Cir. 1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Brinegar v. United States*, 338 U.S. 160, 175–76 (1949).

However, this is not the case here, where Plaintiff alleges that the search turned up "no evidence of illegality or misconduct," which is consistent with the alleged fact that the Juvenile Complaint was later "dismissed in its entirety . . . for lack of . . . probable cause to support I.A.'s arrest." (ECF No. 35 ¶¶ 46, 54, 56.) Additionally, Plaintiff alleges the Juvenile Complaint "makes no mention of the discovery of any knife or that I.A. was found to be in possession of a knife." (*Id.* ¶ 60.) Given the total absence of facts and circumstances that could substantiate a reasonable police officer to believe that "an offense ha[d] been or [was] being committed," the Court finds Plaintiff has sufficiently pled an absence of probable cause to justify Police Defendants' "hours" long detention of I.A. (*Id.* ¶ 46.) Therefore, Plaintiff has stated a claim for violation of the Fourth Amendment under 42 U.S.C. § 1983 as to Police Defendants' seizure of I.A.

**b.  School Defendants' Search and Seizure of I.A.**

Second, applying the same probable cause standard, the Court finds that Plaintiff's Amended Complaint states a claim as to both the School Defendants' improper search and seizure of I.A. The Court will again address the search before turning to the seizure.

Under *T.L.O.*, reasonable suspicion is typically enough to justify a search conducted by a school official. 469 U.S. at 341–42 (footnotes omitted). However, when school officials conduct searches of students *in conjunction with* law enforcement, the higher probable cause standard may well govern. *See supra* III.A.2; *cf. Kachatourian v. Hacienda La Puente Unified Sch. Dist.*, 2012 U.S. Dist. LEXIS 195474, at *32–33 (C.D. Cal. Jan. 24, 2012) (applying a lower standard than probable cause where the search was directly related to the active danger that spurred police involvement).

Based on the facts pled in Plaintiff's Amended Complaint, School Defendants did not have the required probable cause. School Defendants noticed "I.A. 'passing bags' [before] "forcibly remov[ing] him from the cafeteria[.]" (ECF No. 35 ¶¶ 43, 45.) That, by itself, cannot establish probable cause, *Brinegar*, 338 U.S. at 175–76, or even reasonable suspicion. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("We have described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)); *see also Ker v. California*, 374 U.S. 23, 33 (1963) ("This Cour[t] [has a] long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application"; "[e]ach case is to be decided on its own facts and circumstances." (internal quotation marks omitted)).

Though the school was initially on alert because of a potential firearm threat that had nothing to do with I.A. (*id.* ¶ 43), any connection between the then-resolved security concern and witnessing I.A. "passing bags" was tenuous at best. *See T.L.O.*, 469 U.S. at 341 ("[A] student search is reasonable if it is . . . justified at its inception." (internal quotation omitted)); *see also Gov't of Virgin Island In Int. of K.O.,* No. 141/2004, 2004 WL 3558508 (Terr. V.I. Dec. 14, 2004) (holding that a search was "not justified at its inception" when the minor was not "engaged in any unlawful conduct or threatening behavior when he was searched"). Therefore, the school's search of I.A., in conjunction with law enforcement, was not supported by probable cause.

School Defendants argue that this case is similar to *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488 (D.N.J. 2019). (ECF No. 36 at 7.) The Court disagrees. In *K.J.*, the vice principal "knew [the student] had in fact brought weapons to school in the past, and believed [the student] was drawing another weapon." 431 F. Supp. 3d at 505. Accordingly, the court concluded that the search was justified at its inception, "particularly in light of [the

student's] reticence when answering [the teacher's] question about his drawing." *Id.* Unlike *K.J.*, where the student in question had a history of similar misconduct to the concern which spurred the search, *id.*, here, the School Defendants searched I.A. based on nothing more than the lingering fears of a resolved threat that had nothing to do with I.A. and visual observations of I.A. "passing bags" with other students. (ECF No. 35 ¶¶ 42–45.) Absent more, the School Defendants' search was not "justified at its inception." *T.L.O.,* 469 U.S. at 341.

Furthermore, *K.J.* applied a lower standard than the one applicable here. As discussed, because School Defendants searched I.A. in conjunction with law enforcement, the search required a predicate finding of probable cause—not reasonable suspicion. *See supra* III.A.2.

Here, just as the School Defendants were required to have probable cause for their search of I.A., they were likewise required to have probable cause for their seizure, but—as alleged in Plaintiff's Amended Complaint—they did not. *See id.* (explaining that if a school's seizure of a student is not independently initiated by school officials but in conjunction with law enforcement, then the probable cause standard governs). Again, focusing solely on the Amended Complaint, all School Defendants had to rely on in detaining I.A. was the sight of I.A. "passing bags" with other students and, perhaps, some lingering frenzy from the resolved firearm threat. (ECF No. 35 ¶¶ 42–45). In the same way that these facts and circumstances were not enough to justify the School Defendants' search at its inception, they were also not enough to establish the probable cause needed for the seizure.

Here, as pled, I.A.'s detention was not prompted by the firearm threat because School Defendants had already concluded "that there was no further threat to the students" when they searched and seized I.A. (ECF No. 35 ¶ 42.) In other words, I.A.'s detention was seemingly spurred

only by I.A.'s innocuous activity. Yet, despite the absence of any sort of weapon on his person,[11] School Defendants *and* Police Defendants not only detained I.A. but kept him handcuffed throughout the detention. (*Id.* ¶¶ 43, 46, 48); *cf. Shuman ex rel. Shertzer*, 422 F.3d at 149 (noting that the detention was reasonable where the detained student was "allowed to do his agricultural science work and was able to leave the room to eat lunch in the cafeteria and to get a drink of water" during his detention, which lasted "no more than four hours").

As articulated in Plaintiff's Amended Complaint, given the duration of the detention, the conditions of the confinement—specifically the prolonged use of handcuffs—the presence of law enforcement, and, most importantly, the fact that School Defendants had no real reason to suspect that I.A. was engaging in some unlawful conduct, as pled, School Defendant's seizure of I.A. was unreasonable as it lacked probable cause.

### 3. Qualified Immunity

Although Plaintiff has sufficiently pled their Fourth Amendment claims, Police Defendants and School Defendants argue that they are entitled to qualified immunity. Accordingly, the Court must determine whether Plaintiff's Fourth Amendment claims are otherwise barred under this doctrine.

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 84 (3d Cir. 2025) (quoting *Pearson v. Callahan*, 555 U.S. 223, 23 (2009)).

---

[11] The Amended Complaint states that though the "BOE's 'investigation determined that [I.A.] was in possession of a knife in his backpack," but Plaintiff alleges it alleges that this discovery was "fabricated." (*Id.* ¶¶ 61, 64.) On a 12(b)(6) motion, the Court must accept the facts in Plaintiff's Amended Complaint as true. *Phillips*, 515 F.3d at 228.

At the motion to dismiss stage, an official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity if "(1) the facts alleged show the offic[ial's] conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)); *see also Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006) (finding a defendant is entitled to dismissal on qualified immunity grounds "before the commencement of discovery unless the allegations state a claim of violation of clearly established law" (citation omitted)). A plaintiff seeking to overcome qualified immunity need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "[Q]ualified immunity [is] defeated if an official 'knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

Here, for the reasons discussed above, Plaintiff has alleged sufficient facts to support the conclusion that Police Defendants and School Defendants' conduct violated I.A.'s Fourth Amendment right against unreasonable searches and seizures, *see supra* III.A.2.a. Therefore, the relevant inquiry is whether this right was clearly established. *Id.* The Court finds that it was not clearly established that Police Defendants' and School Defendants' search and seizure of I.A. required probable cause. *See Doe v. Woodard*, 912 F.3d 1278, 1293–98 (10th Cir. 2019), *cert. denied*, 587 U.S. 1015 (2019) (holding that caseworker who searched child for signs of abuse at preschool did not violate clearly established law because the circuits at the time were divided as to whether the "special-needs exception" to the warrant requirement applied in this context); *see*

*also Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 171 (3d Cir. 2016), *as amended* (Mar. 21, 2016) (explaining that caseworkers are protected by qualified immunity unless clearly established law puts them on notice that their conduct is a violation of the Constitution).

As explained above, the law here is not well-settled. *T.L.O.* left open several questions, including whether school seizures are also governed by the reasonableness standard and whether school searches and seizures involving law enforcement are subject to this same lower standard. In *Shuman ex rel. Shertzer*, the Third Circuit answered this first question. However, neither *T.L.O.*, *Shuman ex. rel. Shertzer*, nor any subsequent opinion from the Supreme Court or the Third Circuit has answered the second question.

Therefore, although Police Defendants and School Defendants violated I.A.'s Fourth Amendment right by searching and seizing I.A. without the requisite probable cause, as alleged in the Amended Complaint, such a right was not "clearly established in light of the specific context of this case." *Taylor*, 856 F. App'x at 379.

Accordingly, the Court finds Police Defendants and School Defendants are entitled to qualified immunity from Plaintiff's claims in Count 1.[12] Therefore, City Defendants' Motion to Dismiss Count 1 is **GRANTED WITH PREJUDICE** as to Police Defendants. Additionally, School Defendants' Motion to Dismiss Count 1 is **GRANTED WITH PREJUDICE**.

### B.    *Monell* Claim (Count 2)

School Defendants argue Plaintiff's *Monell* claim is subject to dismissal for two reasons. First, as to the policy or custom theory of liability, School Defendants argue that Plaintiff relies

---

[12] Accordingly, the Court finds amendment would be futile as to Count 1. *See Bankwell Bank*, 2021 WL 211583, at *2.

"on conclusory statements that School and Police [D]efendants routinely tolerated unlawful detentions." (ECF No. 45 at 7.) Second, as to the deliberate indifference theory of liability, School Defendants contend that Plaintiff has not alleged sufficient facts identifying a program of training "so severe as to amount to deliberate indifference" or indicating a likelihood that the constitutional violations that I.A. suffered will recur. (ECF No. 36-1 at 11.) City Defendants make the same arguments as to the deliberate indifference theory but did not make arguments against Plaintiff's policy or custom arguments. (ECF No. 37-1 at 11.) Plaintiff responds by arguing that (1) the facts in the Amended Complaint describe a total disregard for procedural safeguards designed to prevent unconstitutional searches and seizures, (2) the "policy failures" laid out in the Amended Complaint establish deliberate indifference, and (3) that it "is sufficient to allege that the type of situation giving rise to the constitutional harm . . . was recurring and predictable." (ECF No. 44 at 25–26.)

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under [S]ection 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a respondeat superior theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

> represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

### 1. Policy or Custom

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (alteration in original) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

"Custom stems from policymakers' 'acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" *Wright v. City of Philadelphia*, 685 F. App'x 142, 147 (3d Cir. 2017) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)); *see Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence."). The scope of the alleged

24

custom must "encompass a category of activities that might reasonably be the subject of a discrete official policy, while not expanding to the point of meaninglessness." *Clayton v. City of Newark*, Civ. A. No. 21-1289, 2021 WL 6062342, at *5 (D.N.J. Dec. 22, 2021). While a plaintiff can adequately allege a custom by providing evidence of a pattern of misconduct, "a plaintiff cannot tie together disparate instances of misconduct that 'would encompass nearly every activity of the [police] department,' as it 'deprives the [municipality] of the notice to which it is entitled as to what policies it maintains that deprived [the plaintiff] of his rights.'" *Id.* (alterations in original) (quoting *Freeman v. City of Crown Point*, Civ. A. No. 13-59, 2014 WL 545511, at *10 (N.D. Ind. Feb. 11, 2014)). Rather, any evidence of prior instances of misconduct set forth by a plaintiff must be sufficiently related to the alleged misconduct at issue so as to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990); *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985).

Here, Plaintiff has articulated facts that, if proven true, can sustain a *Monell*-style claim under a policy or custom theory. Plaintiff alleges the City of Plainfield, Plainfield School District and the BOE "had received numerous complaints concerning the inappropriate and excessive use of authority by police officers and school security personnel." (ECF No. 35 ¶ 70.) Notwithstanding these complaints, the City of Plainfield, Plainfield School District, and the BOE, "failed to adopt, implement, or enforce constitutionally adequate policies governing student searches, detentions and arrests, in the school settings." (*Id.* ¶ 102.) Plaintiff alleges a "widespread custom" of noncompliance with the BOE's "search and seizure policy[,] which clearly require[d] individualized reasonable suspicion, mandate[d] parental notification prior to a search, and subject[ed] law enforcement involved searches to higher standards." (*Id.* ¶ 106.) In essence,

Plaintiff sufficiently makes the following policy and custom argument: The City of Plainfield, Plainfield School District, and the BOE embraced an unlawful practice of allowing or even facilitating unconstitutional searches and seizures of students like I.A. despite "numerous complaints" about this practice. *See Wright*, 685 F. App'x at 147.

### 2. Deliberate Indifference

If the policy at issue "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222–24 (3d Cir. 2014) (citation and internal quotation marks omitted) "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 223 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). Although "[o]rdinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train,'" liability may be based on a single incident if the need for training is sufficiently obvious. *Id.* at 223 (citing *Connick v. Thompson*, 563 U.S. 51, 64 (2011) (reaffirming that in "rare" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a preexisting pattern of violations")). Courts in this circuit have applied this "single-incident liability" theory to failure to train claims but has recognized that it also applies "to other claims of [municipal] liability through inaction." *See e.g.*, *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

The Third Circuit has adopted a three-part test for determining whether a failure to train or to implement a policy amounts to deliberate indifference, requiring that: "(1) municipal

policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 2008) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)); *see also Thomas*, 749 F.3d 217 at 224–25 ("Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" (quoting *Bryan Cnty.*, 520 U.S. at 409)).

Here, Plaintiff's Amended Complaint sufficiently pleads facts that amount to "deliberate indifference." *Carter*, 181 F.3d at 356. First, Plaintiff contends that the city of Plainfield, Plainfield School District, and BOE had a policy, Plainfield BOE Policy 5145.12, that "purport[ed] to regulate student search[es] and seizure[s.]" (ECF No. 35 ¶ 73, 75.) This policy required, among other things, that "School Defendants have individualized, articulable suspicion before conducting a search of a student." (*Id.* ¶ 75.) According to Plaintiff, this policy was "tolerated or affirmatively endorsed by final policymakers, including administrators at the City [of Plainfield], PPD, School District[,] and [the] BOE." (*Id.* ¶ 81.) In other words, in adopting such a policy, Plaintiff contends that the relevant municipal policymakers knew that employees would confront situations that could involve student searches and seizures. Second, Plaintiff contends that the City of Plainfield, Plainfield School District, and BOE had a "history" of "inappropriate and excessive use of authority by police officers and school security personnel, including the detention, search and handcuffing of students without proper justification or parental notification within the district." (*Id.* ¶¶ 70–71 ("Defendants City, School District and BOE had received numerous complaints.").) Contrary to School Defendants' arguments, such a factual allegation is not a "conclusory statement." Plaintiff is correct that under Third Circuit law, it would be "unduly harsh" to require

Plaintiff to "identify a particular policy and attribute it to a policymaker[] at the pleading stage without [the] benefit of discovery." *Carter*, 181 F.3d at 357–58; *see Forrest v. Parry*, 930 F.3d 93, 109 ("Indeed, the sheer volume of complaints from outsiders, coupled with the absence of any internal response may lead a reasonable jury to conclude that Camden was aware of supervisors mishandling or being unable to handle their duties."). Third, Plaintiff has alleged facts that allow the Court to infer that the wrong choice by school and city employees would result in student searches and seizures that fail to comport with the requirements of the Fourth Amendment. (ECF No. 35 ¶¶ 70–71, 77.) According to Plaintiff, because school searches and seizures are not altogether infrequent occurrences, there is a BOE policy on point; however, improper "training, in combination with the custom of disregard for enacted policies" will lead to reoccurring violations of students' constitutional rights. (*Id.* ¶¶ 70, 77.)

Accordingly, City Defendants' Motion to Dismiss Count 2 is **DENIED WITH PREJUDICE** as to the City of Plainfield. Additionally, School Defendants' Motion to Dismiss Count 2 as to Plainfield School District and the BOE is also **DENIED WITH PREJUDICE**.

### C.    Fourteenth Amendment Violation of Due Process Claim (Count 3)

School Defendants argue that Plaintiff's procedural due process claim fails for four reasons: (1) I.A.'s pre-hearing suspension was justified in light of the allegation of bringing a knife to school; (2) Plaintiffs have failed to allege pursuit or denial of all available administrative remedies; (3) while I.A. was suspended between November 9, 2022 and February 27, 2023, it is not unconstitutional for a government authority to take that amount of time to hold a post-deprivation hearing and reach a decision; and (4) the doctrine of qualified immunity protects School Defendants from Plaintiff's Due Process claim. (ECF No. 36-1 at 22, 26–27.) Plaintiff counters that (1) the pre-hearing suspension was not justified because the "alleged emergency basis

for I.A.'s removal . . . was a fabrication," (2) the procedures that may have existed were "never available or were rendered . . . inadequate by the School Defendants' . . . misconduct," (3) and that qualified immunity does not shield School Defendants because the right to a hearing pre-suspension is well established. (ECF No. 44 at 27–29.)

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). In New Jersey, the "law clearly provides . . . the right to a free public education." *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D.N.J. 2008) (citing N.J. Stat. Ann. § 18A:38-1).

> [A]lthough states are not constitutionally required to maintain public school systems, once a state undertakes that responsibility and requires students to attend, the state must "recognize a student's legitimate entitlement to a public education as a property interest protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."

*Astacio v. E. Brunswick High Sch.*, Civ. A. No. 16-938, 2019 WL 3843090, at *9 (D.N.J. Aug. 15, 2019) (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)).

Generally, "procedural due process . . . requires that the deprivation of a protected interest 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Marin v. Sec'y of Pa.*, 715 F. App'x 139, 143 (3d Cir. 2017) (citing *Goss*, 419 U.S. at 579). A student "must be given oral or written notice of the charges against him or her and a student who denies the charges must be given an explanation of the evidence the authorities have and an opportunity to present his or her side of the story." *S.G. ex rel. A.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417,

424 (3d Cir. 2003) (citing *Goss*, 419 U.S. at 581). Notice may be given at the time of the hearing, and the hearing itself may be informal. *Goss*, 419 U.S. at 582; *see also S.G.*, 333 F.3d at 424. However, "the interpretation and application of the Due Process Clause are intensely practical matters and that '(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Goss*, 419 U.S. at 578. Accordingly, there are times when "prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable." *Id.* 419 U.S. at 582–83 (describing the emergency removal exception).

### 1. Procedural Due Process Claim

Here, as School Defendants concede, Plaintiff has sufficiently alleged the first element of their due process claim. (ECF No. 36-1 at 22.) Therefore, the relevant inquiry is whether I.A. was deprived of adequate process. *Hill*, 455 F.3d at 233–34.

Both Plaintiff and School Defendants agree that School Defendants suspended I.A. for over one hundred days. (ECF No. 36-1 at 25.) Based on this extended suspension, Plaintiff argues that I.A. did not receive sufficient pre-suspension or post-suspension due process. (ECF No. 44 at 7.)

Plaintiff alleges that School Defendants suspended I.A. without cause and, as such, cannot rely on the "emergency removal exception outlined in *Goss*." (*Id.* at 27.) The Court agrees. According to Plaintiff's Amended Complaint, a copy of a Plainfield Public Schools Incident Report made clear that the "school suspended him for possessing [a] knife in his backpack." (ECF 35 ¶ 59.) However, Plaintiff argues that this was a lie. (*Id.* ¶ 60.) While a "broad allegation of a lie . . . is conclusory," Plaintiff has provided facts to support the allegation. *Bradford v. Khamooshian*,

No. 17-CV-02053, 2019 WL 337179, at *4 (S.D. Cal. Jan. 28, 2019). Specifically, Plaintiff notes that the Juvenile Complaint issued the day after the start of the suspension "makes no mention of the discovery of any knife or that I.A. was found to be in possession of a knife." (*Id.* ¶ 60.) Accepting the "factual allegations in the [Amended C]omplaint [as true] and draw[ing] all inferences from the facts alleged in the light most favorable" to Plaintiff, the Court agrees with Plaintiff that, as alleged, the emergency removal exception from *Goss* does not apply where School Defendants' reason for suspending I.A. is alleged to be manufactured. *Phillips*, 515 F.3d at 228.

However, Plaintiff has failed to allege a due process violation because the Court finds Plaintiff chose not to use the meaningful procedures available to I.A. *See Suzuki*, 227 F.3d at 116. "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). Under N.J.A.C. 6A:16–7.3(a)(10)(iii), a student like I.A. who is subjected to a "long-term suspension" is entitled to a "formal hearing before the district board of education . . . no later than 30 calendar days following the day the student is suspended from the general education program."

Here, "Plaintiff[] ha[s] not provided any information in her Amended Complaint about what processes were available to [I.A.], whether [he] took advantage of those processes, or why those processes were unavailable or patently inadequate." *Colombo v. Bd. of Educ. for Clifton Sch. Dist.*, No. 2:11-CV-00785, 2017 WL 4882485, at *6 (D.N.J. Oct. 29, 2017). Plaintiff argues "the procedures that may have existed 'on the books' were never available or were rendered patently inadequate by the School Defendants' own misconduct [and that an] appeal would not remedy I.A.'s initial denial of due process." (ECF No. 44 at 28.) But Plaintiff fails to cite to the Amended Complaint, which, fatally, does not lay out with sufficient factual particularly why the available

processes were inadequate. (*Id.* at 28); *Papasan*, 478 U.S. at 286; *see also Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss."). As such, Plaintiff's procedural due process claim fails to state a claim upon which relief may be granted.[13] Accordingly, School Defendants' Motion to Dismiss Count 3 is **GRANTED WITHOUT PREJUDICE**.

### D.    New Jersey State Civil Rights Action and State Constitutional Claim (Count 4)

#### 1.  Substantive Due Process

School Defendants argue Plaintiff has failed to allege "any facts to plausibly suggest that School Defendants had anything to do with [I.A.'s] arrest or prosecution." (ECF No. 36-1 at 27.) City Defendants argue Plaintiff's substantive due process claim fails because due process analysis is inappropriate given that the Fourth Amendment governs the government behavior implicated here. (ECF No. 37-1 at 11 (citing *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013).) As to School Defendants' arguments, Plaintiff contends the Amended Complaint alleges facts that would permit the Court to infer that School Defendants "took active steps to instigate or encourage I.A.'s prosecution." (ECF No. 44 at 30.) It appears Plaintiff did not respond to City Defendants' *Bergdoll* argument.

The New Jersey Civil Rights Act, unlike 42 U.S.C. § 1983, protects only against "the deprivation of and interference with '*substantive* rights, privileges or immunities secured by the Constitution or laws of'" New Jersey. *Tumpson v. Farina*, 95 A.3d 210, 225 (N.J. 2014) (quoting N.J.S.A. 10:6–2(c)) (emphasis in the original). However, like 42 U.S.C. § 1983, the New Jersey

---

[13] School Defendants argue in the alternative that they are entitled to qualified immunity. (ECF 36-1 at 26–27.) Because School Defendants have failed to allege a procedural due process violation, the Court need not reach whether School Defendants are entitled to qualified immunity. *Caissie v. City of Cape May*, 619 F. Supp. 2d 110 (D.N.J. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Civil Rights Act is not an independent source of substantive rights. *Id.* (adopting the United States Supreme Court test from *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997), to determine whether a statute or constitutional provision confers a substantive right for purposes of a claim under the New Jersey Civil Rights Act).

Initially, it is unclear what substantive right Plaintiff seeks to vindicate. (ECF No. 35 ¶¶ 121–29.) Plaintiff seems to allege that City Defendants and School Defendants searched, detained, and arrested I.A. without "probable cause or reasonable suspicion" and violated I.A.'s "fundamental rights to privacy." (*Id.* ¶¶ 123, 125.) Plaintiff also appears to raise a procedural due process claim, but as discussed above, the New Jersey Civil Rights Act is not a vehicle for such a claim and, as such, fails to state a claim. *Farina*, 95 A.3d at 225. And because the allegation as to the violation of I.A.'s fundamental right to privacy is nothing more than a conclusory statement without sufficient factual underpinnings, Plaintiff fails to state a claim as to a violation this right. *Iqbal*, 556 U.S. at 678.

Accordingly, City Defendants' and School Defendants' motion to dismiss as to Plaintiff's substantive claim arising under Article I, Paragraph I is **GRANTED WITHOUT PREJUDICE**.

### 2. Equal Protection

The New Jersey Constitution provides equal protection of the laws under Article I, Paragraph 1. *Lewis v. Harris*, 908 A.2d 196, 211 (2006).

> In considering equal protection-based challenges, [the New Jersey Supreme Court has] not [always] followed the traditional equal protection paradigm of the federal courts, which focuses rigidly on the status of a particular protected class or the fundamental nature of the implicated right. Instead, when analyzing equal protection challenges under New Jersey's Constitution, [the court has] applied a balancing test that weighs the "nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction."

*State v. Chun*, 943 A.2d 114, 142 (N.J. 2008), *modified*, *State v. Olenowski*, 289 A.3d 456 (N.J. 2023) (citing *Caviglia v. Royal Tours of Am.*, 842 A.2d 125, 132 (N.J. 2004)). However, the court has applied traditional federal tiers of scrutiny to an equal protection analysis, instead of a balancing test. *See State v. Lagares*, 601 A.2d 698, 705 (N.J. 1992) ("Where a statute does not treat a suspect or semi-suspect class disparately, nor affect a fundamental right including a liberty interest, the provision is subject to a rational basis analysis." (citation modified)).

Here, Plaintiff has not established an equal protection claim. (ECF No. 35 ¶¶ 20, 125–26.) Plaintiff alleges that "Defendants . . . [c]onduct[ed] a retaliatory campaign of harassment following Plaintiff's complaints concerning I.A.'s education needs," but that is not enough to state an equal protection claim. (*Id.* ¶ 20) Indeed, nothing in the Amended Complaint sounds of an equal protection violation.

Accordingly, School Defendants' and City Defendants' motion to dismiss as to Plaintiff's equal protection claim arising under Article I, Paragraph 1 is **GRANTED WITHOUT PREJUDICE**.

### 3.  Freedom from Unreasonable Searches and Seizures

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." *State v. Smart*, 289 A.3d 469, 474 (N.J. 2023) (quoting *State v. Nyema*, 267 A.3d 449, 459 (N.J. 2022)). Despite the overlap between the federal and New Jersey constitutional standards, "it is well known that [the New Jersey] State Constitution 'provides greater protection against unreasonable searches and seizures than the Fourth Amendment.'" *Id.* (quoting *State v. Carter*, 255 A.3d 1139, 1148 (N.J. 2021)). However, the New Jersey Supreme Court has not addressed whether the New Jersey State Constitution requires probable cause or reasonableness

when school searches are conducted in conjunction with or at the behest of law enforcement. *See State In Int. of T.L.O.*, 463 A.2d 934 (N.J. 1983), *rev'd sub nom.*, *New Jersey v. T.L.O.*, 469 U.S. 325 (1985).[14]

In *State In Int. of T.L.O.*, the New Jersey Supreme Court, interpreting the United States Constitution, embraced a reasonableness standard for school searches conducted by school officials but noted that "[i]f it should occur that a police-initiated search employs school officials for law enforcement purposes, courts will have little difficulty in finding a subterfuge." *Id.* at 941 (citing *Piazzola v. Watkins*, 316 F. Supp. 624, 628 (M.D. Ala. 1970), *aff'd*, 442 F.2d 284 (5th Cir. 1971)). Still, it is unclear whether the New Jersey Supreme Court would read the New Jersey Constitution to require probable cause instead of reasonableness if the search were initiated jointly between law enforcement and school officials.

Generally, federal courts do not interpret state constitutions. *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"); *Poole v. Stephens*, 688 F. Supp. 149, 158 (D.N.J. 1988) ("[Q]uestions of New Jersey state constitutional law, particularly those of first impression, should be decided by that state's courts. Accordingly, this Court chooses to stay its hand in deciding the claims under the New Jersey

---

[14] The Court's analysis above, *see infra* III.A.2 (discussing the applicability of the probable cause standard to the School Defendants and Police Defendants), should not be misconstrued as importable to the Court's discussion of Article I, Paragraph 7 of the New Jersey Constitution. Critically, both *T.L.O.* opinions interpreted only the United States Constitution. *T.L.O.*, 469 U.S. at 343 n. 10 ("Of course, New Jersey may insist on a more demanding standard under its own Constitution or statutes. In that case, its courts would not purport to be applying the Fourth Amendment when they invalidate a search."). Moreover, the Court expressly declines to reach the merits of whether School Defendants or City Defendants violated I.A.'s rights pursuant to Article I, Paragraph 7 of the New Jersey Constitution.

Constitution in the case at bar . . . .”). As the United States Supreme Court teaches, “it is fundamental that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions.” *Nat'l Tea Co.,* 309 U.S. at 557. Given that the New Jersey Supreme Court has yet to address whether the New Jersey State Constitution requires probable cause or reasonableness when school searches are conducted in conjunction with or at the behest of law enforcement, the Court will decline to exercise supplemental jurisdiction over Plaintiff's New Jersey constitutional claims as to unreasonable search and seizure. *Wilmington Christian Sch., Inc. v. Bd. of Educ. of Red Clay Consol. Sch. Dist.*, 545 F. Supp. 440, 449 (D. Del. 1982) (declining to exercise pendent, *i.e.*, supplemental jurisdiction over “an important issue of first impression concerning the interpretation of a state constitution”).

Accordingly, pursuant to 28 U.S.C. § 1367(c)(1), School Defendants' and City Defendants' motion to dismiss as to Plaintiff's claim arising under Article I, Paragraph 7 is **GRANTED WITHOUT PREJUDICE**.

### E.    False Arrest and Imprisonment (Count 5)

School Defendants argue that Plaintiff's claim of a false arrest and imprisonment is not plausible as alleged because Plaintiff alleges only conclusory statements of conspiracy to suggest that School Defendants had anything to do with I.A.'s arrest or criminal prosecution.[15] (ECF No. 36-1 at 28.) Plaintiff has not contested this argument. (ECF No. 44.)

A “plaintiff asserting a false arrest [or] false imprisonment claim need only prove that he or she was wrongfully deprived of freedom.” *Bryant v. Camden Cnty. Police Dep't*, No. A-0896-18T4, 2020 WL 4134789, at *5 (N.J. Super. Ct. App. Div. July 21, 2020) (quoting *DelaCruz v. Borough of Hillsdale*, 838 A.2d 498, 512 (N.J. Super. Ct. App. Div. Jan. 6, 2004), *aff'd in part,*

---

[15] City Defendants do not raise arguments as to Count 5. (ECF No. 37-1.)

*rev'd in part,* 870 A.2d 259 (2005)). "False arrest and false imprisonment are different names for the same tort." *Id.* (citing *Price v. Phillips*, 218 A.2d 167, 169 (N.J. Super. Ct. App. Div. 1966)).

Here, the Court agrees with School Defendants that Plaintiff has only provided conclusory statements of School Defendants' involvement in the arrest of I.A. *Iqbal*, 556 U.S. at 678. Accordingly, School Defendants' motion to dismiss as to Count 5 is **GRANTED WITHOUT PREJUDICE**.

### F.    Malicious Prosecution (Count 6)

School Defendants argue Plaintiff fails to allege that they initiated the criminal action against I.A., defeating the malicious prosecution claim. (ECF No. 36-1 at 29.) For their part, City Defendants argue Plaintiff has failed to allege malicious motivation or the absence of probable cause. (ECF No. 37-1 at 12.) Plaintiff counters the Amended Complaint alleges sufficient facts that, if proven true, show School Defendants encouraged the initiation of the criminal action, which is enough to satisfy the first element of a malicious prosecution claim. (ECF No. 44 at 30.) Plaintiff also contends the Amended Complaint allows an inference of malice because Plaintiff has alleged an absolute dearth of evidence supporting probable cause to arrest I.A. (*Id.* at 31.)

"Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). "[E]ach element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." *Id.* (internal citation omitted). Under New Jersey law, the first element of malicious prosecution may be satisfied where there is "proof that defendant took 'some active part in instigating or encouraging the prosecution' or 'advis[ing] or assist[ing] another person to begin

the proceeding.'" *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1161 (N.J. Super. Ct. App. Div. 2004) (quoting Prosser and Keeton, The Law of Torts § 119, at 872 (5th ed., 1984)). The second element—malicious motivation—"is defined as the 'intentional doing of a wrongful act without just cause or excuse.'" *LoBiondo*, 970 A.2d at 1024–25 (quoting *Jobes v. Evangelista*, 849 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2004), *cert. denied*, 852 A.2d 193 (N.J. 2004). Courts "have permitted malice to be inferred from a finding that a defendant has neither probable cause nor a reasonable belief in probable cause." *Id.* at 1025.

Plaintiff has failed to state a claim for malicious prosecution as to School Defendants. Although Plaintiff compares this case to *Epperson*, it is distinguishable. As Plaintiff notes, in *Epperson*, the defendant "br[ought] plaintiff to the police station, . . . remain[ed] present while plaintiff was interrogated by the police, and . . . participat[ed] in the interrogation." 862 A.2d at 1161. Here, unlike in *Epperson*, Plaintiff only alleges that, "[f]or reasons unknown, I.A. was again grabbed by PPD officers, formally arrested, and transported to PPD headquarters for processing." (ECF No. 35 ¶ 52.) While Plaintiff alleges School Defendants "orchestrated and conspired with the Police Defendants to formally—and falsely—arrest I.A." (*id.* ¶ 53), the Court does not accept this conclusory statement as true.[16] *Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)).

---

[16] While Plaintiff sufficiently alleged joint action between the School Defendants and Police Defendants as to the search and seizure, as discussed above, the allegations of joint action regarding the criminal prosecution are not enough. (*See e.g.*, ECF No. 35 ¶¶ 45–46 ("I.A. was forcibly removed from the cafeteria by school security and PPD officers, taken to the SRO office, where he was searched and aggressively handcuffed . . . . Despite finding no evidence of illegality or misconduct, the School Defendants and Police Defendants detained I.A. at the SRO office for several hours . . . .").)

Plaintiff has, however, successfully pled a malicious prosecution claim as to Police Defendants. *LoBiondo*, 970 A.2d at 1025 (finding that courts may infer malice "from a finding that a defendant has neither probable cause nor a reasonable belief in probable cause" (citation omitted)). As discussed in the Court's Fourth Amendment analysis above, as alleged in the Amended Complaint, Police Defendants were wholly without probable cause to search or detain I.A. *See supra* III.A.2.b. Here, Plaintiff points out that although I.A. was "charged with Obstructing the Administration of Law, in violation of N.J.S.A. 2C:29-1A, . . . the Juvenile Complaint . . . was later dismissed in its entirety at I.A.'s first appearance for lack of evidence." (ECF No. 35 ¶¶ 54, 56.) Therefore, Plaintiff has satisfied the malice element of a malicious prosecution claim by sufficiently alleging that Police Defendants searched, seized, and, ultimately, charged I.A. without probable cause or reasonable belief that there was probable cause.

Accordingly, School Defendants' motion to dismiss as to Count 6 is **GRANTED WITHOUT PREJUDICE** and Police Defendants' motion to dismiss as to Count 6 is **DENIED WITH PREJUDICE**.

### G. Abuse of Process (Count 7)

Plaintiff has withdrawn Count VII alleging abuse of process. (ECF No. 44 at 26.) Accordingly, the claim is **WITHDRAWN**, and School Defendants and City Defendants' motions to dismiss Count 7 is **DENIED AS MOOT.**

### H. Negligence (Count 8)

School Defendants argue that Plaintiff's negligence claim fails because there is no duty of school employees to interfere with a police investigation or arrest procedures. (ECF No. 36-1 at 35.) Police Defendants argue that Plaintiff has not sufficiently alleged that Police Defendants violated a duty of care. Plaintiff responds by arguing that School Defendants had a duty to ensure

I.A.'s safety and protect his rights and that Police Defendants violated the applicable duty of care by detaining I.A. without probable cause or reasonable suspicion.

Under New Jersey law, negligence requires a showing of four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Utility Co.*, 59 A.3d 561, 571 (N.J. 2013). Courts may utilize discretion to determine the existence of a duty of care. *See Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996) (citing *Wang v. Allstate Insurance Co.*, 592 A.2d 527, 534 (N.J. 1991)). Generally, "educators have no greater obligation than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1285 (N.J. 2007) (internal quotations omitted).

First as to the School Defendants, Plaintiff describes school officials' general duty to "act reasonably and prudently to protect [students'] rights," but the Court is not aware of, nor does Plaintiff cite, any New Jersey case that includes this general duty that school officials obstruct law enforcement actions. (ECF No. 35 ¶ 154.) The Court declines Plaintiff's invitation to apply this general duty so expansively. Indeed, as pled, the facts alleged in Count 8 as to School Defendants sound in malicious prosecution and "do not sound in negligence." *Ramirez v. United Parcel Serv.*, Inc., Civ. A. No. 06-1042, 2008 WL 5451022, at *7 (D.N.J. Dec. 31, 2008). To the extent that Plaintiff is attempting to state a claim in negligence, Plaintiff contends School Defendants "actively participated in the unlawful detention, handcuffing, and search of I.A. without any reasonable or factual basis." (ECF No. 44 at 33.) But these intentional acts fail to support a negligence cause of action.

Plaintiff's claim in negligence as to Police Defendants is similarly flawed. Plaintiff, again, essentially articulates a malicious prosecution claim and ask the Court to essentially create a

"negligence back door." *Drisco v. City of Elizabeth*, Civ. A. No. 03-397, 2010 WL 1253890 (D.N.J. Mar. 23, 2010) (citing *Brunson v. Affinity Federal Credit Union*, 972 A.2d 1112, 1124–25 (N.J. 2009) (referring to the "negligent investigation" claim as a "negligence back door" and declining to create a "new cause of action for negligent investigation as a surrogate for a traditional malicious prosecution claim")). But when asked to determine whether law enforcement has a duty to make arrests only upon probable cause and to conduct proper investigations, the New Jersey Supreme Court unanimously declined to hold that such a legal duty exists. *See Brunson*, 972 A.2d at 1124–25 (N.J. 2009) (rejecting the Appellate Division's creation of a new cause of action for negligent investigation as a surrogate for a traditional malicious prosecution claim). As such, Plaintiff has failed to plead facts establishing a duty of care applicable to Police Defendants.

Accordingly, School Defendants' motion to dismiss as to Count 8 is **GRANTED WITH PREJUDICE**, and City Defendants' motion to dismiss as to Count 8 is **GRANTED WITH PREJUDICE**.[17]

### I.    Intentional Infliction of Emotional Distress (Count 9)

School Defendants argue that Plaintiff's IIED claim falls short because School Defendants' actions as pled in the Amended Complaint do not demonstrate that School Defendants intended to cause I.A. emotional distress or that these actions were extreme or outrageous enough to make out an IIED claim. (ECF No. 36-1 at 33–34.) City Defendants make the same arguments as to their actions as pled in the Amended Complaint. (ECF No. 37-1 at 15–16.) Plaintiff responds that the Amended Complaint adequately alleges both School Defendants and City Defendants acted at least

---

[17] The Court finds amendment to Count 8 would be futile as to School Defendants and City Defendants. *See Bankwell Bank*, 2021 WL 211583, at *2.

recklessly, if not intentionally, and that their actions, given I.A.'s age and the circumstances of the interaction were sufficiently extreme and outrageous. (ECF No. 44 at 35–36.)

A claim for IIED consists of four elements. *See Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863–64 (N.J. 1988). First, the defendant must have either intended to do the act and produce emotional distress, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id*. Courts employ a two-prong test to evaluate both the intent of the defendant to do the act and the intent to produce emotional distress. *Id*. A "person acts recklessly in engaging in conduct if: (a) the person knows of the risk of harm created by the conduct or knows facts that make the risk obvious to another in the person's situation, and (b) the precaution that would eliminate or reduce the risk involves burdens that are so slight relative to the magnitude of the risk as to render the person's failure to adopt the precaution a demonstration of the person's indifference to the risk." Restatement (Third) of Torts § 2 (A.L.I. 2010). Second, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 544 A.2d at 863. Extreme and outrageous conduct is an elevated threshold under New Jersey law. *See Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 96 (N.J. Super. Ct. App. Div. 2001). Third, the conduct "must have been the proximate cause of the plaintiff's emotional distress." *Buckley*, 544 A.2d at 863. Fourth, the emotional distress must be "so severe that no reasonable man could be expected to endure it." *Id*.

The Court finds Plaintiff has not successfully pled an IIED claim. Specifically, while Plaintiff has alleged facts that if proven true demonstrate that the defendants here acted recklessly and engaged in behavior that is severe and outrageous for IIED purposes, Plaintiff has not pled

sufficient facts to meet the fourth element: emotional distress "so severe that no reasonable man could be expected to endure it." *Id.*

Here, School Defendants are engaged in educating students, but their greatest obligation is "to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *Frugis v. Bracigliano*, 827 A.2d 1040, 1050 (N.J. 2003). Because School Defendants relied on nothing more than their observation of I.A. "passing bags" before forcibly removing him from the cafeteria, it cannot be said that School Defendants were engaged in conduct that prioritized I.A.'s welfare. (ECF No. 35 ¶¶ 43, 45.) Indeed, based on the facts as pled, it should have been obvious to School Defendants that such an interaction would create a risk of emotional harm to a young, fifteen-year-old child. (*Id.* ¶ 10.) Had School Defendants taken a more restrained approach by not involving law enforcement given the seemingly innocuous conduct I.A. was engaged in, the risk of emotional harm would have been reduced. The same is true for Police Defendants. As professional law enforcement, Police Defendants did not need to forcibly remove I.A. given the harmless behavior. Assuming the behavior was cause for concern, the police could have allowed school officials to first approach I.A. before getting involved.

Additionally, as pled, School Defendants' and Police Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Buckley*, 544 A.2d at 863. In *Fleming v. United Parcel Service, Inc.*, the court held that where "probable cause existed to prosecute [plaintiff], he cannot show the kind of outrageous conduct on the part of defendants necessary to maintain his action." 604 A.2d 657, 686 (Law. Div. 1992), *aff'd*, 273 N.J. Super. 526, 642 A.2d 1029 (App. Div. 1994). The Court finds that—in this case— the converse holds. Construing the Amended Complaint in the light most favorable to Plaintiff,

School Defendants acted outrageously when they worked in conjunction with law enforcement to remove I.A. from the cafeteria after observing him doing nothing more than passing around bags with other students. (ECF No. 35 ¶¶ 43, 45.) This escalation satisfies the second element of an IIED for purposes of a motion to dismiss.

Likewise, Police Defendants participated in forcibly removing I.A. from the cafeteria despite I.A.'s innocuous conduct. (*Id.* ¶¶ 43, 45.) Police Defendants, while not educators, understood that other students were around yet chose to involve themselves. (*Id.*) The Court can reasonably and readily infer from the facts as alleged that allowing school officials to engage with I.A. would have reduced the emotional harm inflicted on him. Furthermore, just as it was outrageous and extreme for School Defendants to involve police officers after observing I.A. passing bags, it was equally outrageous and extreme for police to agree to get involved given the facts here. *Cf. Fleming*, 604 A.2d at 686.

However, while Plaintiff alleges I.A. suffered "severe emotional distress, including lasting psychological harm, which continues to affect his well-being," according to the New Jersey Supreme Court, this is not enough.[18] *Buckley*, 544 A.2d at 863; *see also Bennett v. Bd. of Educ., Freehold Reg'l High Sch. Dist.*, No. A-3240-04T2, 2006 WL 1714349, at *2 (N.J. Super. Ct. App. Div. June 23, 2006) (concluding that "embarrassment and annoyance" is not a sufficient injury to support a claim for intentional infliction of emotional distress); *DeAngelis v. Hill*, 847 A.2d 1261,

---

[18] While Plaintiff describes I.A.'s emotional distress in general terms, *i.e.*, "psychological harm," the emotional distress is spelled out with greater detail under Plaintiff's negligent infliction of emotional distress ("NIED") claim. (ECF No. 35 at 26 ("I.A. experienced severe emotional and psychological harm, including distress, embarrassment, humiliation, and trauma, some of which may have long-lasting effects.")); *see also Wright-Phillips v. United Airlines, Inc.*, No. CV 20-14609, 2021 WL 1221111 (D.N.J. Apr. 1, 2021) ("The third and fourth elements are essentially the same as with an NIED claim . . . ." (citing *Innes v. Marzano-Lesnevich*, 87 A.3d 775, 797 (N.J. Super. Ct. App. Div. 2014))).

1272 (N.J. 2004) (holding that "general maladies [like embarrassment, stress, and lost sleep] do not rise to the level of severe distress required in an emotional distress claim"). Additionally, even assuming I.A. suffered harm greater than embarrassment and annoyance, allegations of "severe emotional distress" and "lasting psychological harm" are not enough. *Iqbal*, 556 U.S. at 678.

Accordingly, School Defendants' motion to dismiss as to Count 9 is **GRANTED WITHOUT PREJUDICE**, and City Defendants' motion to dismiss as to Count 9 is **GRANTED WITHOUT PREJUDICE**.

### J.      Negligent Infliction of Emotional Distress (Count 10)

School Defendants and City Defendants argue that Plaintiff's NIED claim fails because Plaintiff has not pled facts establishing either the "zone of danger" or "bystander" theory of liability. Plaintiff contends that these theories are not exclusive.

The Supreme Court of New Jersey has instructed:

> [A] plaintiff can maintain a negligent-infliction-of-emotional-distress cause of action where: (1) the plaintiff suffers "substantial bodily injury or sickness" arising from the plaintiff's location within the "zone of risk" created by the defendant's negligent conduct as recognized in *Falzone*; *or* (2) the plaintiff has a sensory, contemporaneous perception of a severe injury to a spouse or close family member caused by the defendant's negligent conduct that results in the plaintiff suffering severe emotional distress as recognized in *Portee*.

*Jablonowska v. Suther*, 948 A.2d 610, 620 (N.J. 2008) (emphasis added). Contrary to Plaintiff's contention otherwise, New Jersey tort law as articulated by the New Jersey Supreme Court controls and supersedes state tort law as explained by lower New Jersey state courts. *But see Johnson v. City of Hoboken*, 299 A.3d 856, 864 (N.J. Super. Ct. App. Div. 2023) (laying out a variant beyond a *Falzone* or *Portee* NIED claim).

Here, Plaintiff's NIED claim arises out of actions committed against *I.A.*, specifically that I.A. was detained, searched, handcuffed, and arrested. (ECF. No. 35 ¶ 2.) "This, however, is not a stand-alone tort claim, but rather a damages question that is parasitic on another tort."[19] *A.B. v. Vineland Bd. of Educ.*, 2018 U.S. Dist. LEXIS 107486, 26 (D.N.J. June 27, 2018). Stated differently, Plaintiff's NIED fails because she raises a "'direct' NIED claim, *i.e.*, that I.A. was directly injured by [City Defendants and School Defendants] and that this entitles her to damages." *Id.* But, so far, the New Jersey Supreme Court has only recognized two types of NIED claims, and a "direct" NIED claim is not one. *Falzone v. Busch*, 214 A.2d 12, 17 (N.J. 1965); *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980).

Accordingly, City Defendants' motion to dismiss as to Count 10 is **GRANTED WITHOUT PREJUDICE,** and School Defendants' motion to dismiss as to Count 10 is **GRANTED WITH PREJUDICE**.[20]

## IV.    CONCLUSION

For the reasons set forth above, School Defendants' motion to dismiss (ECF No. 36) is **GRANTED IN PART** and **DENIED IN PART**, and City Defendants' motion to dismiss (ECF No. 37) is **GRANTED IN PART** and **DENIED IN PART.** Additionally, pursuant to Rule

---

[19] And as best the Court can tell, Plaintiff has not raised an independent tort claim arising out of a physical injury from being detained, searched, handcuffed and arrested.

[20] The Court finds amendment to Count 10 would be futile as to School Defendants. *See* Bankwell Bank, 2021 WL 211583, at *2. While the Court is inclined to hold amendment to Plaintiff's Count 10 would also futile as to City Defendants, the Court dismisses Count 10 as to City Defendants without prejudice given City Defendants' failure to comply with the Court's judicial preferences and Plaintiff's request for leave to further amend her Complaint.

15(a)(2), Plaintiff is **GRANTED** leave to amend her Amended Complaint to cure the deficiencies addressed herein. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  October 28, 2025