NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RASHEEDAH HEARD, as parent and natural
guardian of Minor I.A.,

Plaintiff,

v.

CITY OF PLAINFIELD; PLAINFIELD PUBLIC
SCHOOL DISTRICT; PLAINFIELD BOARD OF
EDUCATION; RASHON K. HASAN; KEVIN
STANSBURY; SHANIESHA EVANS; FRANK
FUSCO; TYRONE WILLIAMS; PLAINFIELD
POLICE DEPARTMENT; OFFICER MICHAEL
GORDON; JOHN DOES 1-10; and JOHN DOES
11-20,

Defendants.

Case No. 2:24-cv-10293(BRM)(MAH)

OPINION

MARTINOTTI, DISTRICT JUDGE

Before this Court is Defendants Plainfield Public School District, Plainfield Board of
Education ("BOE"), Superintendent Rashon K. Hasan, Principal Kevin Stansbury ("Principal
Stansbury"), Vice Principal Shaniesha Evans ("Vice Principal Evans"), Vice Principal Frank
Fusco ("Vice Principal Fusco"), and Tyrone Williams's ("Director Williams") (collectively, the
"School Defendants") Motion for Reconsideration ("Motion") (ECF No. 51) of the Court's
Amended Order ("Order") (ECF No. 49) entered on October 29, 2025. The School Defendants
filed their Motion on November 11, 2025 (ECF No. 51), Plaintiff Rasheedah Heard ("Heard") filed
a Cross Motion for Reconsideration and in Opposition to the School Defendants' Motion on
December 15, 2025 (ECF No. 58), and the School Defendants filed a combined Opposition to
Heard's Cross Motion and Reply to Heard's Opposition to the School Defendant's Motion on

January 6, 2026 (ECF No. 59). Having reviewed and considered the parties' submissions filed in connection with the Motion and Cross Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the School Defendants' Motion for Reconsideration (ECF No. 51) and Heard's Cross Motion for Reconsideration (ECF No. 58) are **DENIED**.

### I.   BACKGROUND

The factual and procedural background of this matter are well known to the parties and were previously detailed in the Court's Opinion on October 28, 2025. (*See* ECF No. 47.) Accordingly, the Court will only briefly recount such information relevant to the motions presently before the Court.

"This case arises from the alleged detention, search, arrest, and prosecution of a fifteen-year-old student, I.A., by Plainfield school officials and Plainfield police officers." (ECF No. 47 at 2 (citing Am. Compl. (ECF No. 35) ¶ 33).) On May 23, 2025, the School Defendants filed their motion to dismiss Heard's Amended Complaint. (School Def.'s Br. (ECF No. 36-1).)  Heard filed an opposition to the School Defendants' motion to dismiss on July 7, 2025. (ECF No. 44.) On July 14, 2025, the School Defendants filed a reply. (ECF No. 45.) The Court granted in part and denied in part the School Defendants' motion to dismiss. (ECF No. 47 at 2). Of the original ten counts alleged against the School Defendants, only Count 2—the negligent training and supervising claim brought under 42 U.S.C. § 1983—remains active. (*Id.* at 28.) The remaining claims against the School Defendants were dismissed: The Court dismissed Counts 1, 8, and 10 with prejudice (*id.* at 22, 41, 46) and Counts 3, 4, 5, 6, and 9 without prejudice (*id.* at 32, 33–34, 36–37, 39, 45). Count 7 was withdrawn. (*Id.* at 39.)

On November 11, 2025, the School Defendants filed a Motion for Reconsideration ("Motion") (ECF No. 51), and Heard filed a Cross Motion for Reconsideration and in Opposition to School Defendants' Motion ("Cross Motion") on December 15, 2025 (ECF No. 58). On January 6, 2026, the School Defendants filed an Opposition to Heard's Cross Motion.[1] (ECF No. 59.)

## II.    LEGAL STANDARD

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i). *See Dunn v. Reed Grp., Inc.*, Civ. No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010). The comments to that rule make clear, however, that "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, Civ. No. 03-3988, 2003 WL 22303078, *2 (D.N.J. Oct. 7, 2003)); *see also Langan Eng'g & Env't Servs., Inc. v. Greenwich Ins. Co.*, Civ. No. 07–2983, 2008 WL 4330048, at *1 (D.N.J. Sept. 17, 2008) (explaining that a motion for reconsideration under Rule 7.1(i) is "'an extremely limited procedural vehicle,' and requests pursuant to th[is] rule[] are to be granted 'sparingly'") (internal citation omitted); *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005).

A motion for reconsideration "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Instead, Rule 7.1(i) directs a party seeking reconsideration to file a brief "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked[.]" L. Civ. R. 7.1(i); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule.").

---

[1] The Police Defendants have not filed a submission with respect to Heard's Cross Motion.

To prevail on a motion for reconsideration, the moving party must file the motion within fourteen days of the entry of order or judgment showing at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A court commits clear legal error "only if the record cannot support the findings that led to th[e] ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the court overlooked something, the movant must point to some dispositive factual or legal matter that was presented to the court. *See* L. Civ. R. 7.1(i).

Stated simply, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 353); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 163 (D.N.J. 1988); *Schiano v. MBNA Corp.*, Civ. A. No. 05-1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, . . . and should be dealt with through the normal appellate process . . . .") (citations omitted).

### III.   DECISION

#### A.  School Defendants' Motion

The School Defendants contend the Court has committed clear legal error with respect to Heard's *Monell* claim. (ECF No. 51-1 at 8.) First, the School Defendants suggest the Court erred when it concluded Heard had sufficiently pled that an unconstitutional policy or custom caused I.A.'s injuries. (*Id.* at 10–12.) According to the School Defendants, Heard's supporting facts were too conclusory and imprecise. (*Id.* at 10–11.) Additionally, the School Defendants argue that the Court's policy or custom theory of *Monell* liability was error because "the law is unsettled regarding whether probable cause is necessary for searches and seizures on school property in the presence of police." (*Id.* at 11.) Moreover, the School Defendants' arguments largely hinge on their proposition that the search and seizure of I.A. was constitutional based on the Court's supposed misapplication of the probable cause standard to the School Defendants.[2] (*Id.* at 9.) Second, with respect to Heard's "deliberate indifference" *Monell* claim, the School Defendants make similar arguments. (*Id.* at 14.) Because the law is unsettled as to the standard governing school searches in the presence of police, the School Defendants posit there can be no "specific deficiency," thereby dooming Heard's "deliberate indifference" *Monell* claim. (*Id.* at 14.) The School Defendants also argue that Heard's reference to a history of improper training does not indicate violations are likely to continue. (*Id.* at 14–15.)

Heard makes five arguments in opposition to the School Defendants' Motion. First, Heard disputes the School Defendants' contention that a municipality cannot be liable under *Monell*

---

[2] Relatedly, the School Defendants also argue the Court's decision creates a "Sophie's choice" for public schools: (1) "conduct a search or seizure on their own initiative because they are subject to a lower reasonableness standard but without the resources to handle potentially violent situations, or (2) contact police to mitigate physical risk but significantly increase the standard for a lawful search or seizure with probable cause." (ECF No. 51-1 at 12–13.)

where there is no underlying constitutional violation by a municipal employee. According to Heard, because she brought an independent *Monell* claim filed against the municipality without relying on theories of vicarious liability, her *Monell* "claim may stand even [without a] constitutional [claim] pending against an individual employee." (ECF No. 58-1 at 6 n.1 (citing *Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 574 (E.D. Pa. 2023)).) Second, Heard disagrees that any "unsettled" aspect of the law frustrates her *Monell* claim. (*Id.* at 7–8.) Instead, Heard argues that any lack of clarity with respect to whether probable cause is necessary for searches and seizures on school property in the presence of police would, at most, prevent individual defendants from being held personally liable and not hinder her *Monell* claim. (*Id.*) Third, in response to the School Defendants' claim that her *Monell* claim is supported merely with conclusory allegations, Heard insists her Amended Complaint includes "specific facts supporting both a municipal policy and a longstanding custom of unconstitutional search-and-seizure practices." (*Id.* at 9.) Fourth, Heard asks the Court to reject the School Defendants' policy arguments. Heard points out that these policy arguments do not meet the requisite motion for the reconsideration standard because the School Defendants have not "identif[ied] any controlling law the Court overlooked or newly decided intervening law." (*Id.* at 10 n.2.) Last, Heard takes issue with the School Defendants' "deliberate indifference" argument and explains that "[w]hether an individual officer is shielded because the law was not 'clearly established' has no bearing on whether the municipality caused a constitutional violation through its own policies, customs or omissions." (*Id.* at 11.)

The School Defendants are not entitled to reconsideration of the Court's decision denying their motion to dismiss Count 2—Heard's *Monell* claim. The School Defendants have not demonstrated that the Court has committed legal error, identified some intervening law, or put

forth new evidence that would justify reconsideration. *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6.

### 1. The Probable Cause Standard Governs the School Defendants' Search and Seizure of I.A.

Initially, the Court declines the School Defendants' invitation to walk back its initial decision applying the traditional probable cause standard to actions conducted by school officials in conjunction with law enforcement agencies. *Heard v. City of Plainfield*, Case No. 2:24-cv-10293, 2025 WL 3017902, at *8 (D.N.J. Oct. 28, 2025). The School Defendants note an "increasing chorus of decisions ha[s] found that reasonableness, not probable cause, is the appropriate standard for Fourth Amendment analysis in the school setting." (ECF No. 51-1 at 9.) But a review of these out-of-circuit decisions reveals distinguishable facts,[3] rendering these decisions inapposite. Additionally, while the School Defendants articulate important policy considerations,[4] policy considerations of equal importance weigh against reversing course. (*Id.* at 12–13.)

First,[5] the Court is not persuaded that it should follow the Eleventh Circuit's line of cases

---

[3] The School Defendants cite cases from three circuits: the Sixth, Eighth, and Eleventh. (ECF No. 51-1 at 9–10 (citing *Tarter v. Raybuck*, 742 F.2d 977, 983 (6th Cir. 1984); *Shade v. City of Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002); *Cason v. Cook*, 810 F.2d 188, 193 (8th Cir. 1987); *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006)).) They also cite three district court opinions; given the fullness of the Court's response with respect to the various circuit decisions, there is no need for the Court to address each of these district opinions individually, except the opinion from the U.S. District Court for the Northern District of Illinois, which sits outside the Sixth, Eighth, and Eleventh Circuits.

[4] School Defendants improperly raise these policy arguments for the first time in this Motion. *See CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013) (holding a motion for reconsideration "is not a vehicle for a litigant to raise new arguments"). Nevertheless, the Court considers them.

[5] The Court organizes this portion of the opinion in accordance with how the School Defendants order their citations to the various decisions from the Courts of Appeals, *i.e.*, starting with the

involving school searches conducted by school officials in conjunction with law enforcement. The School Defendants cite *Gray ex rel. Alexander* to support their argument that the School Defendants should not be governed by the probable cause standard (*id.* at 9), but this decision merely states that courts in the Eleventh Circuit "apply the reasonableness standard . . . to school seizures by law enforcement officers." 458 F.3d at 1304 (first citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342 n.7 (1985) (articulating the reasonableness standard); then citing *Gray v. Bostic*, No. 04-12240, slip op. at 14 (11th Cir. Dec. 27, 2004) (per curiam) ("[C]ourts, including this [one] have applied *T.L.O.*'s reasonableness standard to school searches by law enforcement.")). Indeed, the case the *Gray ex rel. Alexander* Court cited—*Gray v. Bostic*—is similarly hazy with respect to articulating the reasoning underlying the Eleventh Circuit's adoption of the *T.L.O.* standard to school seizures by law enforcement officers.

However, in *Gray v. Bostic*, the court cites *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950 (11th Cir. 2003) as an example of the Eleventh Circuit's application of the *T.L.O.* standard to such situations. No. 04-12240, slip op. at 14 (11th Cir. Dec. 27, 2004) (per curiam).

Although *Thomas ex rel. Thomas* does more than repeat what standard the Eleventh Circuit applies to such situations, it too offers little persuasive guidance to this Court as that opinion does not explain why it applied the lower *T.L.O.* standard to a search that involved a law enforcement officer. *See United States v. Williams*, 326 F.3d 535, 541 (4th Cir. 2003) (finding a non-binding opinion unpersuasive where the opinion "cited no authority for [a] proposition and did not explain its reasoning"). Indeed, at times, the opinion seems at odds with itself. For example, in its qualified immunity analysis, the court distinguished the facts of the case from a different Eleventh Circuit

Eleventh Circuit decision before turning to the Eighth and Sixth Circuit decisions respectively and concluding with a discussion of the Northern District of Illinois decision. (*See* ECF No. 51-1 at 9.)

case "because [in that other Eleventh Circuit case, the] search took place in police custody and was conducted by law enforcement officers[.]" *Thomas ex rel. Thomas*, 323 F.3d at 955. But it is unclear how a search conducted by law enforcement officers presents any meaningful difference given the involvement of a law enforcement officer in the search then before the *Thomas ex rel. Thomas* court. *Id.* at 952 ("Officer Billingslea . . . searched the boys."). This raises the question: Is the Eleventh Circuit's *Thomas ex rel. Thomas* decision implicitly premised on a conclusion that the law enforcement officer was, in effect, a school official? *See, e.g., People v. Dilworth*, 661 N.E.2d 310, 320 (Ill. 1996) (concluding that the school resource officer ("SRO") was "properly considered to be a school official"). Here, as alleged in Heard's Amended Complaint, the search and seizure involved police officers. (ECF No. 35 ¶ 45). Despite the Eleventh Circuit's embrace of the *T.L.O.* standard to school searches by law enforcement officers, this Court remains unpersuaded that it should follow course.

Second, the Court is likewise unpersuaded by the Eighth Circuit's decisions in *Cason v. Cook* and *Shade v. City of Farmington*. 810 F.2d 188 (8th Cir. 1987); 309 F.3d 1054 (8th Cir. 2002). *Cason* is unpersuasive as the facts are distinguishable. *Martinez-Polanco v. Warden, FCI Fort Dix*, Civ. A. No. 24-7005, 25-1761, 2025 WL 1511192, at *2 n.5 (D.N.J. May 27, 2025) (concluding a non-binding, out-of-district decision was "not persuasive because [of] distinguishable" facts).

In *Cason*, a school official removed a student from class and brought her to an empty, locked restroom, where the school official first informed the student that she was going to search her purse before so doing. 810 F.2d at 190. However, while the law enforcement officer in *Cason* was present in the locked restroom, the officer did not participate in questioning the student. *Id.* The school official found one of the reportedly stolen items, at which point the officer "conducted

9

a pat-down search of [the student] from her shoulders to her toes while [the student] was made to stand against the wall with her hands up and legs spread." *Id.* The Eighth Circuit, under these facts, concluded the "imposition of a probable cause warrant requirement based on the limited involvement of [law enforcement] would not serve the interest of preserving swift and informal disciplinary procedures in schools," because law enforcement "did not conduct any of the initial interviews of the students and participated in a pat-down search only after evidence was discovered." *Id.* at 192. The facts here are distinguishable. *See Martinez-Polanco*, 2025 WL 1511192, at *2 n.5. Unlike *Carson*, law enforcement involvement was more than "limited" in this case. *Cf.* 810 F.2d at 192. As alleged, "PPD officers removed I.A. from the cafeteria and took him to the SRO office, 'where he was searched[,] aggressively handcuffed[,]' and detained for several hours." *Heard*, 2025 WL 3017902, at *8 (citing and quoting Am. Compl. (ECF No. 35) ¶¶ 43, 45).

*Shade* is likewise distinguishable. There, unlike here, "school officials *initiated* the investigation and search of [the student] in furtherance of the school's interest in maintaining a safe learning environment." *Shade*, 309 F.3d at 1061 (emphasis added). Indeed, because of the school officials' initiation of the investigation and search and because the school officials "*asked [the] officers to assist them* in furtherance of that interest" the Eighth Circuit applied the *T.L.O.* standard to assess the lawfulness of the search conducted by law enforcement. *Id.*

Third, the Court is unpersuaded that the Sixth Circuit's *Tarter* decision because the facts here are different. 742 F.2d at 984 ("declin[ing] to pass directly on the question of what fourth amendment standards would be applicable where the fruits of a search are turned over to law enforcement officials and used in proceedings against the student searched"). In *Tarter*, the court explained that the "involvement of the police with respect to [the student] was marginal." *Id.* Accordingly, the court concluded "[t]heir presence d[id] not suggest that a standard other than

10

reasonable cause ought to be adopted." *Id.* However, here, as already discussed, the involvement of the police was more than "marginal." *Cf. id.*; *see also* (ECF No. 35 ¶ 43–46.)

Last, the Court also declines to follow *Martens v. Dist. No. 220, Bd. of Educ.* because it presents different and inapposite facts. 620 F. Supp. 29, 32 (N.D. Ill. 1985). In *Martens*, the court characterized the officer's role as "relatively limited." 620 F. Supp. at 32. But law enforcement here initiated the search of I.A. in conjunction with the school officials. (ECF No. 35 ¶ 43–46.) Furthermore, there, unlike here, "there [wa]s no indication that a criminal investigation was contemplated [or] that this was a cooperative effort with law enforcement." *Martens*, 620 F. Supp. at 32. Drawing all inferences in Heard's favor, it appears that a criminal investigation was contemplated and that there was a cooperative effort with law enforcement. (ECF No. 35 ¶¶ 43, 91-92.)

### 2. Heard Sufficiently Pled that an Unconstitutional Custom Caused I.A.'s Injuries.

Heard did not simply allege that the School Defendants engaged "in a 'widespread custom' of noncompliance with the School Defendants' own policies." (ECF No. 51-1 at 11 (quoting (ECF No. 35 ¶ 106)).) Indeed, as the School Defendants recognize, Heard alleged the School Defendants "failed to adopt, implement, or enforce constitutionally adequate policies governing student searches and arrests, in the school setting[]," despite "numerous complaints." (ECF No. 51-1 at 11 (quoting ECF No. 36 ¶ 70).) These are not, as the School Defendants describe them, "bare assertions." (*Id.*) As the Third Circuit explained, "[c]ustom may be established by proof of knowledge and acquiescence." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). Heard alleges that the School Defendants had knowledge of conduct that violated students' Fourth Amendment rights *vis a vis* the "numerous complaints" but took no remedial action. (ECF No. 36 ¶ 70.) This is enough at the motion to dismiss stage. Moreover, the School Defendants' reliance

11

on *Szerensci v. Shimshock* is unpersuasive. (ECF No. 51-1 at 11–12 (citing Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021)).) In *Szerensci*, the plaintiff merely alleged that the defendant "affirmatively adopted an official practice, custom or policy of allowing visitors access to the municipal building without being adequately screened for weapons." *Id.* But, here, Heard has put forth detailed facts to support her custom argument. (*See* ECF No. 36 ¶ 70.) Specifically, Heard alleges that the School Defendants received "numerous complaints concerning the inappropriate and excessive use of authority by police officers and school security personnel, including the detention, search and handcuffing of students without proper justification." (*Id.*)

Furthermore, Heard's *Monell* claim is not hindered regardless of whether the law regarding probable cause is well-settled. First, as discussed further below, the School Defendants' conduct was unlawful under both the probable cause standard and *T.L.O.*'s lower reasonableness standard. *See infra* at III.B.2. Second, as the Third Circuit has explained, "for *Monell* liability to attach, 'there must . . . be a violation of the plaintiff's constitutional rights.'" *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (quoting *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (per curiam)). But—contrary to School Defendants' argument otherwise—*Monell* liability does not depend on whether an individual officer is protected by qualified immunity. *Id.* What matters is whether there was a violation of I.A.'s constitutional rights. *Id.* Here, the Court concluded that the School Defendants violated I.A.'s constitutional rights. *Heard*, 2025 WL 3017902, at *9–10. Accordingly, the School Defendants' Motion asking the Court to reconsider its policy and custom decision is **DENIED**.

**3. Heard Sufficiently Pled that the School Defendants' Failure to Train or Supervise Their Employees Amounted to Deliberate Indifference.**

As the Court has explained, Heard sufficiently alleged the School Defendants' failure to train or supervise their employees. *Heard v. City of Plainfield*, Civ. A. No. 24-10293, 2025 WL 3017902, at \*14 (D.N.J. Oct. 28, 2025). Contrary to the School Defendants' argument, whether an individual officer is shielded by qualified immunity does not necessarily affect whether the municipality caused a constitutional violation through its own policies. *See Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (laying out a three-part test for determining whether a failure to train or to implement a policy amount to deliberate indifference). What matters for purposes of evaluating "deliberate indifference" for a *Monell* claim is whether the lack of clearly established law negates whether the municipal policymakers knew that employees would confront a particular situation. *Id.*

Any lack of clarity as to whether the School Defendants needed reasonable suspicion or probable cause to seize and search I.A. does not mean Heard has failed to identify a specific deficiency in the School Defendant's training and supervision of their employees. *See Harriell v. Cuzzupe*, Civ. A. No. 21-20604, 2023 WL 2583468, at \*3 (D.N.J. Mar. 21, 2023). For instance, in *Harriell*, the complaint lacked factual allegations connecting training failures to recurring misconduct, and therefore failed to identify a specific deficiency. But, here, Heard's Amended Complaint identified a specific policy, prior complaints regarding searches and seizures, and how mishandlings of student searches and seizures will deprive students of their Fourth Amendment rights. *Heard*, 2025 WL 3017902 at \*14 (citing ECF No. 35 ¶¶ 70–71, 73, 75, 77 81); *but see Cooper v. City of Paterson*, Civ. A. No. 23-03566, 2024 WL 1298917, at \* 6 (D.N.J. Mar. 27, 2024) (concluding the plaintiff's complaint did not "allege any facts specifically identifying

13

deficits with respect to training or supervision of its police officers as it pertains to use of force"). As the Third Circuit has explained, to survive a motion to dismiss, a plaintiff must identify "the specific training" that should have been offered "which would have prevented the deprivation of their constitutional rights." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). As set forth in Heard's Amended Complaint, the School Defendants should have "meaningfully investigate[d], supervise[d], or discipline[d]" those who engaged in the detaining, searching, and handcuffing of students "without proper justification." (ECF No. 35 ¶¶ 70, 71.)

Perhaps the School Defendants point to the lack of clearly established law to suggest that they could not possibly have any real conception or knowledge of what would constitute proper justification. (ECF No. 51-1 at 11–12.) But the proper focus is on whether the School Defendants knew that its employees "would need to conduct searches." *Est. of Roman v. City of Newark*, 914 F.3d 789, 800 (3d Cir. 2019) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). The School Defendants' knowledge of its need to conduct searches of students—and its failure to adequately prepare or discipline its employees in light of that knowledge—is precisely what Heard has alleged. (ECF No. 35 ¶¶ 70–71, 73, 75, 77 81.)

Because Defendants identify no overlooked law, no clear error, and no new evidence, and because their arguments misapply the deliberate-indifference standard, the School Defendants' Motion seeking reconsideration of the Court's "deliberate indifference" decision is **DENIED**.

### B. Heard's Cross Motion

Heard asks the Court to reconsider its qualified immunity ruling with respect to the School Defendants, Plainfield Police Department, and Plainfield Police Officer Michael Gordon (together with the Plainfield Police Department, "Police Defendants"). First, because the Court found that the search at issue was not justified at its inception, Heard argues that the School Defendants and the Police Defendants should not be able to avoid liability because of qualified immunity. (ECF

No. 58-1 at 12–15.) According to Heard, qualified immunity does not provide a safe harbor given that the more lenient reasonableness standard is both clearly established and unmet—regardless of whether probable cause is the proper standard. Additionally, Heard argues that "Defendants' conduct falls squarely within the category of cases in which the constitutional violation is so obvious that every objectively reasonable officer would have known it was unlawful." (*Id.* at 14 (citing *Gray v. Bostic*, 458 F.3d 1295, 1307 (11th Cir. 2006)).) Second, Heard requests reconsideration of the Court's qualified immunity ruling as to the Police Defendants because "[w]hatever uncertainty may exist in the *T.L.O.* line of cases regarding school officials, there is no ambiguity about what the Fourth Amendment [requires] of police officers." (*Id.* at 15.)

In opposition, the School Defendants argue that the Court's qualified immunity ruling was sound and characterizes the "Court's discussion of *T.L.O.*" as "mere dicta" and "limited solely to the application of" the probable cause standard. (ECF No. 59 at 13.) Additionally, the School Defendants contend "the cases cited by [Heard] regarding 'obvious clarity' of [the] municipal employee's conduct are readily distinguishable." (*Id.* at 14.) The School Defendants also note that Heard's obvious clarity argument "was fully available . . . in the initial motion [and] . . . not properly raised for the first time on reconsideration." (*Id.* (citing L. Civ. R. 7.1(i)).)

### 1. It Is Not Clearly Established that Police Defendants' Search and Seizure of I.A. Required Probable Cause.

Heard insists the law is clearly established with respect to a police officer's search and seizure of a student at school. While the Court agrees that the Police Defendants were required to have probable cause before searching and seizing I.A., *Heard*, 2025 WL 3017902, at *8–9, as other courts have stated, there is ambiguity about what the Fourth Amendment requires of police officers "conducting a [search and] seizure in connection with school officials." *See, e.g.*, *Bills by Bills v. Homer Consol. Sch. Dist. No. 33-C*, 967 F. Supp. 1063, 1066 (N.D. Ill. 1997) (citing *New Jersey*

15

*v. T.L.O.*, 469 U.S. 325, 342 n. 7 (1985) ("[I]t is not certain what standard applies to a police officer conducting a seizure in connection with school officials . . . .")). Illustrative of the lack of well-established law respecting searches and seizures by police officers in connection with school officials, some courts have stated that "the standard lies somewhere within the spectrum defined by probable cause at one end and reasonableness under the circumstances at the other." *Bills by Bills*, 967 F. Supp. at 1066. Accordingly, the Court will not reconsider its earlier qualified immunity ruling. *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6.

### 2. It Is Not Clearly Established that, at a Minimum, the School Defendants Should have had Reasonable Suspicion to Search and Seize I.A.

As the Court explained when reviewing the School Defendants' search and seizure of I.A., "passing bags"—the only impetus for the search and seizure at issue—was "nothing more than an innocuous activity." *Heard*, 2025 WL 3017902, at *8, 10. As such, the Court found this was not enough to establish probable cause to search or seize I.A. *Id.* at *8–11 (holding the Police Defendants and the School Defendants lacked probable cause to search or seize I.A.). Indeed, the Court also opined that merely observing a student passing bags around "cannot establish . . . even reasonable suspicion." *Heard*, 2025 WL 3017902, at *9. That said, the Court held that both the Police Defendants and the School Defendants were nonetheless protected by qualified immunity. *Id.* at *11–12.

When the *T.L.O.* Court indicated that it was not deciding the appropriate standard for searches conducted in concert with police officers, it did not expressly embrace a reasonableness standard as a constitutional minimum.[6] *T.L.O.*, 469 U.S. at 341 n. 7 (citing *Picha v. Wielgos*, 410

---

[6] Although Heard is correct that *T.L.O.* has required some school searches be justified at inception and grounded in reasonable suspicion, the *T.L.O.* Court "explicitly refrained from expressing a judgment on the nature of the Fourth Amendment review when a search is 'conducted by school

F. Supp. 1214, 1219–1221 (ND Ill. 1976)) ("This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question."). One court describes the *T.L.O.* Court's citation to *Picha* as merely an "intimat[ion] that the question left open was whether the lower *T.L.O.* standard of reasonableness, *or* instead the higher probable cause standard would apply when police participated in the search." *Pacheco v. Hopmeier*, 770 F. Supp. 2d 1174, 1193 (D.N.M. 2011) (emphasis added). Without more, this citation is not an articulation of a standard respecting a constitutional minimum for student searches conducted by school officials and law enforcement. *See Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019) ("[C]learly established law . . . must . . . 'be particularized to the facts of the case." (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).)

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As the Third Circuit recently made clear, courts may not define "clearly established law abstractly" because doing so would "conflict with a landslide of Supreme Court Precedent." *Urda v. Sokso*, 146 F.4th 311, 315 (3d Cir. 2025) (collecting cases). Here, Heard has not cited to a case with facts or decisional language from the United States Supreme Court, the Third Circuit, or this Court that would have provided notice to the Police Defendants or the School Defendants that they needed at least reasonable suspicion to search or seize I.A. where the search and seizure were conducted jointly. *But see Pacheco*, 770 F. Supp. 2d at 1193 ("[T]here is no open question about whether some standard less

---

officials in conjunction with or at the behest of law enforcement." *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1060 (8th Cir. 2002).

17

exacting than the *T.L.O.* reasonableness standard applies, but rather only whether the more exacting probable cause standard applies when police officers participate in the search.").[7]

The Court agrees with Heard—it makes little sense to apply a less exacting standard than the *T.L.O.* reasonableness standard to the Police Defendants and the School Defendants' search and seizure of I.A. However, given the existing case law (or lack thereof) "at the time" of the conduct at issue, *Urda*, 146 F.4th at 313, the Court must stand by its earlier qualified immunity decision, particularly on a motion for reconsideration.[8] *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6. Accordingly, Heard's Cross Motion is **DENIED**.

---

[7] For purposes of qualified immunity, which requires courts to consider whether a right was clearly established at the time of the challenged conduct—without more—the *Picha* footnote does not create a standard adopting the *T.L.O.* standard as the constitutional floor. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (stating that "[i]n order for a right to be clearly established there must be applicable precedent from the Supreme Court"). Since *T.L.O.*, the United States Supreme Court has not decided the question of what standard should govern school searches conducted together by school officials and law enforcement. *Sivella v. Twp. of Lyndhurst*, Civ. A. No. 20-2342, 2021 WL 3356934, at *3 (3d Cir. Aug. 3, 2021). The "absence of relevant Supreme Court precedent" concerning these kinds of school searches and the fact that the *Picha* citation is merely dicta, "strong supports [this Court's] finding that" I.A.'s right to be free of a school search that does not at least meet the *T.L.O.* standard is "not clearly established." *Sivella*, 2021 WL 3356934, at *3; *see also Aleynikov v. Goldman Sachs Grp., Inc.*, Civ. A. No. 21-1782, 2022 WL 421398, at *2 (3d Cir. Feb. 11, 2022) ("Dicta are statements in a judicial opinion that 'could have been deleted without seriously impairing the analytical foundations of the holding.'" (quoting *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017)); *Atiyeh v. Hairston*, Civ. A. No. 92-3368, 1993 WL 532976, at *6 (E.D. Pa. Dec. 22, 1993) ("A statement in dicta does not put defendants on notice that their actions may violate the constitution.").

[8] Moreover, the Court is unpersuaded by Heard's "obvious clarity" argument. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 376, 377–78 (2009) (acknowledging that officials can be on notice that their conduct violates established law in novel factual circumstances but nevertheless granting the school official qualified immunity despite a lack of reasons to suspect the drugs presented a danger or were concealed in the student's underwear). As the United States Supreme Court has taught, "specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for . . . office[ials] to determine how the relevant legal doctrine . . . will apply to the factual situation the office[ials] confront[].'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Saucier*, 533 U.S. at 205). Given the lack of clarity governing school searches and seizures involving law enforcement and school officials, the School Defendants are indeed entitled to qualified immunity.

18

## IV.    CONCLUSION

For the reasons set forth above, and for good cause appearing, School Defendants' Motion for Reconsideration (ECF No. 51) and Heard's Cross Motion for Reconsideration (ECF No. 58) are **DENIED**. An appropriate order follows.


Date: February 24, 2026                                  */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**