<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

RASHEEDAH HEARD, as parent and natural guardian of Minor I.A.,

Plaintiff,

v.

CITY OF PLAINFIELD; PLAINFIELD PUBLIC SCHOOL DISTRICT; PLAINFIELD BOARD OF EDUCATION; RASHON K. HASAN; KEVIN STANSBURY; SHANIESHA EVANS; FRANK FUSCO; TYRONE WILLIAMS; PLAINFIELD POLICE DEPARTMENT; OFFICER MICHAEL GORDON; JOHN DOES 1–10; and JOHN DOES 11–20,

Defendants.

Case No. 2:24-cv-10293(BRM)(MAH)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is  Defendants Plainfield Public School District (the "District"), Plainfield Board of Education ("BOE"), Superintendent Rashon K. Hasan ("Superintendent Hasan"), Principal Kevin Stansbury ("Principal Stansbury"), Vice Principal Shaniesha Evans ("Vice Principal Evans"), Vice Principal Frank Fusco ("Vice Principal Fusco"), and Tyrone Williams's ("Director Williams") (collectively, the "School Defendants") Motion to Dismiss (ECF No. 70) Plaintiff Rasheedah Heard's ("Plaintiff") Second Amended Complaint ("SAC") (ECF No. 64) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] Plaintiff filed an Opposition to the

---

[1] The SAC also names the City of Plainfield, Plainfield Police Department ("PPD"), Officer Michael Gordon ("Officer Gordon"), John Does 1–10, and John Does 11–20 as defendants. John Does 1–10 are "fictitious and gender-neutral identities and represent[] unnamed agents, servants[,] and employees of the District and/or BOE[,] who [allegedly] violated Plaintiff's rights and/or were

Motion to Dismiss.[2] (ECF No. 75.) School Defendants filed a Reply. (ECF No. 76.) Having reviewed and considered the submissions filed in connection with the Motion to Dismiss and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause shown, School Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

A.    **Factual Background**

The complaint before the Court is Plaintiff's SAC. The Court has previously decided two motions to dismiss (ECF No. 47), as well as a motion for reconsideration and a cross motion for reconsideration (ECF No. 60). As such, the parties are undoubtedly familiar with the facts of this case. *See, e.g.*, *Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, 41 F. Supp. 3d 427, 430–31 (D.N.J. 2014) (summarizing only briefly the facts, where the court had already "extensively discussed the facts" of the case in an earlier opinion). Because the SAC is now the operative complaint, the Court relies exclusively on the facts articulated within the SAC itself. *Macelus v. Cap. Collection Serv.*, Civ. A. No. 17-2025, 2017 WL 5157389, at *2 (D.N.J. Nov. 7, 2017).

For the purpose of the motion before the Court, the Court accepts the factual allegations in the SAC as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.*

---

a proximate cause or substantial factor of Plaintiff's damages. They are sued in their individual and official capacities." (ECF No. 64 ¶ 21.) John Does 11–20 are "fictitious and gender-neutral identities and represent[] unnamed agents, servants and employees of the City and PPD who [allegedly] violated Plaintiff's rights and/or were a proximate cause or substantial factor of Plaintiff's damages. They are sued in their individual and official capacities." (*Id.* ¶ 26.) Officer Gordon and John Does 11–20 are hereafter referred to collectively as the "Police Defendants."

[2] Plaintiff filed this action on behalf of her minor child, I.A.

*Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation modified).

This case arises from the alleged detention, search, arrest, and prosecution of a then-fifteen-year-old student, I.A.[3] (ECF No. 64 ¶¶ 10, 33.) On November 9, 2022, after a concerned parent called Plainfield High School to report that someone had brought a firearm into the school two days earlier, School Defendants ordered a lockdown of the school building. (*Id.* ¶ 35–36.) School Defendants, including Principal Stansbury, Vice Principal Evans and Director Williams, oversaw the lockdown and subsequent investigation. (*Id.* ¶ 37.) During the investigation, a Plainfield School official contacted the PPD, and "PPD officers responded to [the school] shortly thereafter." (*Id.* ¶ 40.)

School Defendants identified C.A. as the student who allegedly brought the firearm to school and brought C.A. from the cafeteria to the School Resource Officer's ("SRO") office, where they spoke with C.A. and searched C.A.'s bag. (*Id.* ¶¶ 39, 41, 42.) Ultimately, School Defendants and the PPD officers were "satisfied that C.A. was not in possession of a weapon" and concluded there was "no further threat to the students." (*Id.* ¶ 42).

Later that day, "school security officers, including [Director] Williams and [SRO] Rodriguez, along with the PPD officers," returned to the school cafeteria where they saw a group of students, including I.A., "passing bags" to each other. (*Id.* ¶ 43). Plaintiff contends "[a]t all relevant times, I.A. was . . . engaged in normal, lawful behavior." (*Id.*) Nevertheless, school

---

[3] The BOE is the "ultimate policymaking authority for all officially adopted policies, procedures, and disciplinary protocols implemented by [s]chool [d]istrict personnel, including all School Defendants . . . . [I]t is the entity legally responsible for the hiring, retention, supervision, [disciplining,] and training" of Plainfield BOE employees. (ECF No. 64 ¶ 88.)

security and PPD officers removed I.A. from the cafeteria and took him to the SRO's office, "where he was searched[,] aggressively handcuffed," and detained for several hours.[4] (*Id.* ¶¶ 45–46.) School Defendants and Police Defendants were both present during I.A.'s detention and were "communicating with one another regarding how the situation should be handled." (*Id.* ¶ 47.)

During his detention, I.A.'s parents were notified of his detainment. (*Id.* ¶ 48.) Both Plaintiff and I.A.'s father repeatedly sought clarification from School Defendants and Police Defendants as to "why I.A. was being detained at the SRO['s] Office in handcuffs." (*Id.* ¶ 49.) I.A.'s parents "were told at that time that I.A. was acting unruly towards the security officers." (*Id.*) "Given the length of time . . . I.A. was detained in handcuffs[] and the inadequate reasons" School Defendants and Police Defendants provided regarding the conditions of I.A.'s detention, I.A.'s parents threatened legal action against all parties involved if I.A. was not immediately released into his parents' custody.[5] (*Id.* ¶ 50.)

Eventually, Police Defendants, including Officer Gordon, uncuffed I.A. and allowed him to return to his parents. (*Id.* ¶ 51.) I.A. "immediately ran to his parents for comfort from [what] he had just experienced." (*Id.* ¶ 52.) "[A]fter I.A. was released to his parents[] and while . . . School Defendants remained present, "I.A. was again seized by PPD officers, formally arrested, and transported to PPD headquarters for processing." (*Id.* ¶ 53.) According to Plaintiff, I.A.'s arrest

---

[4] Plaintiff asserts that "prior to November 9, 2022, Defendants City [of Plainfield], [Plainfield Public] School District[,] and the BOE had received numerous complaints concerning the inappropriate and excessive use of authority by police officers and school security personnel, including the detention, search[,] and handcuffing of students without proper justification or parental notification within the district." (*Id.* at 89.)

[5] Prior to this interaction between Plaintiff and School Defendants, at some point in time, Plaintiff had issued "prior complaints to . . . School Defendants regarding I.A.'s individual education plan." (ECF No. 64 ¶ 86.)

"immediately followed" the objections to I.A.'s "prolonged detention" and the "threats of legal action" lodged by Plaintiff and her husband. (*Id.* ¶ 63.)

"[T]he decision to re-arrest I.A. was made in the presence of, and with the knowledge and participation of one[] or more School Defendants, who remained on scene and were actively communicating with the responding officers at the time." (*Id.* ¶ 54.) According to Plaintiff,

> after it became apparent that no weapon had been discovered and that the earlier detention of I.A. lacked justification, one or more of . . . School Defendants[,] [including Principal Stansbury,] urged or encouraged the responding officers to take I.A. into custody and pursue criminal charges in order to justify the detention and search that had already occurred.

(*Id.* ¶ 56, 58.)

I.A. was "subsequently charged with Obstructing the Administration of Law, in violation of N.J. Stat.Ann. § 2C:29-1A, under Complaint Number: JC-2011-000034-2012" (the "Juvenile Complaint"). (*Id.* ¶ 59 (citation modified).) The Juvenile Complaint was ultimately "dismissed in its entirety at I.A.'s first appearance for lack of evidence [as] there existed no probable cause to support I.A.'s arrest and/or prosecution for Obstructing the Administration of Law—nor any other crime." (*Id.* ¶ 61).

Later that month, Vice Principal Fusco informed Plaintiff that I.A. "had been suspended based on the events of November 9, 2022." (*Id.* ¶ 64.) I.A. remained suspended from November 9, 2022, through February 27, 2023, while the BOE conducted an investigation. (*Id.* ¶ 78.) A copy of the Plainfield Public Schools Incident Report (the "Report"), which Plaintiff received "[s]hortly []after" November 15, 2022 (*id.* ¶¶ 64–65), contained, in relevant part, the following information:

> Student [I.A.] who was found to have a knife in his backpack[,] was in the process of being released to his parents by PPD and took off running before the release had been completed. The police placed him in their custody, and he was taken to the PPD for processing. The school suspended him for possessing the knife in his backpack.

5

(*Id.* ¶ 65 (first alteration in original).) By contrast, "the Juvenile Complaint issued on November 10, 2022, makes no mention of the discovery of any knife or that I.A. was found to be in possession of a knife" (*id.* ¶ 73), nor did the police ever charge I.A. with being in possession of a knife on November 9, 2022 (*id.*).

On November 22, 2022, Plaintiff sent a written communication to Superintendent Hasan, "requesting a meeting to discuss the suspension and to challenge the allegations against I.A." (*Id.* ¶ 68.) Around two weeks later, a meeting was convened with Superintendent "Hasan and/or other School Defendants." (*Id.* ¶ 69.) "Plaintiff [was never] advised that the meeting would be a forum through which she could challenge the suspension, however, Plaintiff intended to do so, nonetheless." (*Id.*) At that meeting, Plaintiff argued against I.A.'s suspension, "but was met . . . with . . . School Defendants' unyielding and unsupported assertion that I.A. had been in possession of a knife." (*Id.* ¶ 70.) "School Defendants, particularly [Superintendent] Hasan, refused to meaningfully consider Plaintiff's arguments[,] choosing instead to rely solely on the unsupported assertion that I.A. possessed a weapon." (*Id.* ¶ 71.) "[A]t no point [in the meeting] did . . . School Defendants present any evidence to support their claim that I.A. possessed a weapon on November 9, 2022." (*Id.* ¶ 72.)

"Following the meeting, . . . School Defendants took no action to reverse or modify the suspension[] and instead continued to enforce the disciplinary measures against I.A." (*Id.* ¶ 77.) The BOE "ultimately adopted and ratified the findings and conclusions of . . . School Defendants, including the assertion that I.A. had been in possession of a knife." (*Id.* ¶ 80.) Indeed, on "February 24, 2023, Plaintiff received a letter from [Superintendent] Hasan on behalf of the BOE noting, among other things, that the BOE's 'investigation determined that [I.A.] was in possession of a knife in his backpack at Plainfield High School on November 9, 2022.'" (*Id.* ¶ 81 (second alteration

6

in original).) I.A. was later transferred out of the school district to complete his education. (*Id.* ¶ 85.)

### B. Procedural History

On November 5, 2024, Plaintiff filed a Complaint, alleging several causes of action. (ECF No. 1.) On January 9, 2025, City Defendants filed their Answer. (ECF No. 23.) In accordance with this Court's judicial preferences, on February 5, 2025, School Defendants filed a pre-motion letter requesting a conference. (ECF No. 25.) On February 12, 2025, Plaintiff timely filed their response to the pre-motion letter. (ECF No. 28.) On February 26, 2025, the Court granted Plaintiff leave to amend their Complaint and ordered that "the Defendants may file a responsive pleading to any filed Amended Complaint within thirty . . . days of the filing of an Amended Complaint." (ECF No. 33.)

On April 25, 2025, Plaintiff filed her Amended Complaint, alleging the following causes of action against all defendants, except as to Count 2, which was only directed against the City of Plainfield, the District, and the BOE: a Fourth Amendment claim under 42 U.S.C. § 1983; a negligent training and supervising claim under 42 U.S.C. § 1983; a Fourteenth Amendment violation of due Process claim under 42 U.S.C. § 1983; an Article I, Section I due process, Article I, Section 5 equal protection, and Article I Section 7 freedom from unreasonable searches and seizures claim under the New Jersey State Constitution and the New Jersey Civil Rights Act; a false arrest and imprisonment claim; a malicious prosecution claim; an abuse of process claim; a negligence claim; an intentional infliction of emotional distress ("IIED") claim; and a negligent infliction of emotional distress claim.[6] (ECF No. 35.)

---

[6] Plaintiff attempted to nest a civil rights conspiracy claim within Count 1. (ECF No. 35 ¶¶ 53, 87 ("[T]he School Defendants . . . orchestrated and conspired with Police Defendants to formally— and falsely—arrest I.A. to cover up their unlawful and otherwise [sic] attempt to justify their

On May 23, 2025, School Defendants filed their motion to dismiss. (School Def.'s Br. (ECF No. 36-1).) City Defendants filed their motion to dismiss four days later. (City Def.'s Br. (ECF No. 37-1).) On October 28, 2025, the Court issued an Opinion and Order granting in part and denying in part both School Defendants' and City Defendants' respective motions to dismiss.[7] (ECF No. 47; ECF No. 49.) Of the original ten claims against School Defendants, only her negligent training and supervising claim brought under 42 U.S.C. § 1983 was permitted to proceed. (ECF No. 49.)

School Defendants filed a motion for reconsideration on November 11, 2025. (ECF No. 51.) On February 24, 2026, the Court issued an Opinion and Order denying both the motion and cross motion for reconsideration. (ECF No. 60; ECF No. 61.)

Plaintiff timely filed a SAC on March 17, 2026.[8] (ECF No. 64.) On March 31, 2026, School Defendants filed a pre-motion letter in anticipation of the filing of a motion to dismiss. (ECF No. 65.) Plaintiff filed a response to the pre-motion letter a week later. (ECF No. 68.) On April 8, 2026,

---

unlawful detention and seizure of I.A., and to shield themselves from liability arising from their unconstitutional acts. . . . Defendants, individually and as a group, . . . participated and conspired with one another, under color of law, to deprive I.A. of his constitutional rights.").) However, nesting a civil rights conspiracy this way failed to comport with Rule 10(b), so the Court will declined to construe it as a separate claim. *See Oaklyn Villas Urban Renewal LLC v. Borough of Oaklyn*, Case No. 22-03177, 2023 WL 2555467, at *4 (D.N.J. Mar. 17, 2023) ("A shotgun pleading can arise in . . . a complaint 'not separating into a different count each cause of action or claim for relief . . . .'" (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015))).

[7] The Court originally replaced the October 28, 2025 Order with the October 29, 2025 Order. (ECF No. 49.) The only material difference between the two orders is that the operative order—the October 29, 2025 Order—dismissed Count 8 as to Police Defendants and School Defendants with prejudice as opposed to without prejudice. (*Id.* at 3)

[8] On November 17, 2025, the Court issued a letter order, which was not entered until November 18, 2025, staying the deadline to file an amended complaint pending the resolution of Plaintiff's motion for reconsideration. (ECF No. 53.)

the Court ordered the parties to proceed with motion practice, having determined a premotion conference would not be beneficial.[9] (ECF No. 69.)

On April 14, 2026, School Defendants filed the Motion now before the Court. (ECF No. 70.) Plaintiff opposed that Motion on May 18, 2026 (ECF No. 75),[10] and School Defendants filed a reply on May 26, 2026 (ECF No. 76).

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the non-moving party. *Phillips*, 515 F.3d at 228. A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual

---

[9] In the Court's April 1, 2026 Order, the Court reminded School Defendants that the Court had already decided that Plaintiff's "*Monell* claim was permitted to proceed." (ECF No. 69 (citing *Rittenhouse Ent., Inc. v. City of Wilkes-Barre*, Civ. A. No. 11-617, 2012 WL 3562030, at *17 n.14 (M.D. Pa. Aug. 16, 2012)).)

[10] On May 1, 2026, Plaintiff filed a proposed consent order extending her time to oppose School Defendants' Motion to Dismiss to May 18, 2026. (ECF No. 71.) The Hon. Michael A. Hammer, U.S.M.J., granted the extension. (ECF No. 72.)

allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id*. "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw

10

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment pursuant to Rule 56. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

School Defendants move to dismiss Counts 2 through 6 for failure to state a claim upon which relief may be granted. The Court addresses each count in turn.[11]

### A.   Fourteenth Amendment Violation of Due Process Claim (Count 2)

School Defendants argue that Plaintiff's procedural due process claim fails for four reasons: (1) Plaintiff has not alleged any attempt to appeal I.A.'s suspension or make use of further process; (2) Plaintiff failed to allege how she was prevented by School Defendants from taking advantage of the processes that were available after I.A. was suspended; (3) the period of I.A.'s suspension was not unconstitutional; and (4) the doctrine of qualified immunity protects School

---

[11] While the Court dismisses various claims and concludes that others may proceed, the Court is only addressing the claims as they pertain to School Defendants, who have filed the Motion now before the Court.

11

Defendants from Plaintiff's procedural Due Process claim. (ECF No. 70-3 at 6–9.)

Plaintiff provides four corresponding counter-arguments: (1) given the duration of I.A.'s suspension, I.A. was owed "some kind of notice and afford some kind of hearing," which Plaintiff posits School Defendants did not provide as required by N.J.A.C. § 6A:16-7.3; (2) the duration of the suspension was not, as School Defendants suggest, constitutional; (3) any further appeal of the suspension would have been futile; and (4) School Defendants are not entitled to qualified immunity because public school students have a clearly established right to receive notice and a hearing before being subjected to a long-term suspension and because assessing qualified immunity on a motion to dismiss is inappropriate while facts are disputed. (ECF No. 75 at 4–5 (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)).)

In further support of its Motion, School Defendants argue due process does not require perfect compliance with New Jersey's codification of the constitutional floor for due process. (ECF No. 76 at 1–2 (citing *Aiello v. Wilmington*, 426 F. Supp. 1272, 1289 (D. Del. 1976)).) Additionally, School Defendants contend that notice of the suspension was timely given "that the incident took place before a three-day holiday weekend" and because "Plaintiff received notice on November 15, 2022," the day after I.A.'s formal suspension began. (*Id.* at 2.) School Defendants also point out that Plaintiff has generally admitted School Defendants provided a written report shortly after Plaintiff was notified that I.A. had been suspended, that School Defendants met with Plaintiff regarding the suspension, and that she received a written decision as to same. (*Id.* at 2–3 (citing ECF No. 64 ¶¶ 65, 67–68, 128–29, 134–36).)

Moreover, in response to Plaintiff's argument that further appeal would have been futile, School Defendants highlight that Plaintiff's SAC does not include allegations showing that she attempted to communicate with School Defendants through December or January of 2022, that she

12

sought to contact New Jersey's Department of Education, that she tried to challenge or appeal I.A.'s suspension under N.J.A.C. § 6A:16-7.3(b), or that she sought to challenge or appeal the suspension to New Jersey's Commissioner of Education under N.J.S.A. § 18A:6-9. (*Id.* 3–4.) What Plaintiff did include, according to School Defendants, are conclusory allegations that any attempts to use the aforementioned processes were "futile." (*Id.* at 3 (citing ECF No. 75 at 9).) Finally, School Defendants argue that because qualified immunity is a question of law, if the Court "finds that Plaintiff has properly pled a due process claim, an additional analysis of qualified immunity is appropriate" and would lead to dismissal. (*Id.* at 4–5.)

As the Third Circuit has explained,

> [t]o state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law."

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

In New Jersey, the "law clearly provides . . . the right to a free public education." *M.G. v. Crisfield*, 547 F. Supp. 2d 399, 408 (D.N.J. 2008) (citing N.J. Stat. Ann. § 18A:38-1).

> [A]lthough states are not constitutionally required to maintain public school systems, once a state undertakes that responsibility and requires students to attend, the state must "recognize a student's legitimate entitlement to a public education as a property interest protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."

*Astacio v. E. Brunswick High Sch.*, Civ. A. No. 16-938, 2019 WL 3843090, at *9 (D.N.J. Aug. 15, 2019) (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). Nowhere do School Defendants contest that they deprived I.A. of an educational benefit by suspending I.A. (ECF No. 70-3 at 5–9; *see also*

ECF No. 1–5.) Accordingly, the key question is whether "the procedures available to [I.A.] [failed] [to] provide 'due process of law.'" *Hill*, 455 F.3d at 233–34 (quoting *Alvin*, 227 F.3d at 116).

Plaintiff has failed to allege that School Defendants did not provide adequate process. Indeed, Plaintiff has not alleged that she attempted to appeal I.A.'s suspension or make use of further processes. That dooms her procedural due process claim.

Under New Jersey law, a board of education has the authority to suspend or expel a pupil. N.J. Stat. Ann. § 18A:37-5. In each instance of a long-term suspension, a board of education or a school administrator with delegated authority must hold a hearing on the proposed discipline and render a decision. N.J.A.C. 6A:16-7.3(a). The decision of the board of education may then be appealed to New Jersey's Commissioner of Education ("Commissioner"), N.J.A.C. 6A:16-7.3(b); N.J. Stat. Ann. § 18A:37-2.4. Here, Plaintiff has not alleged an attempt to appeal the BOE's decision to suspend I.A. to the Commissioner, which is fatal to her procedural due process claim.

As pleaded in Plaintiff's SAC, "Plaintiff eventually met with [Superintendent] Hasan," before "the BOE purportedly conducted an investigation" and "adopted and ratified" the BOE's findings and conclusions, "including the assertion that I.A. had been in possession of a knife" and, on February 24, 2023, Plaintiff received "a letter from [Superintendent] Hasan on behalf of the BOE noting" the BOE's decision to suspend I.A. (ECF No. 64 ¶¶ 68–69, 74, 78, 80–81.) What is notably missing from Plaintiff's recounting of the sequence of events, however, is any attempt to appeal the BOE's suspension decision to the Commissioner. (*See generally id.*) Indeed, Plaintiff has pleaded the following: "To the extent additional administrative procedures were available . . ., such remedies were futile as the [BOE] had already adopted and ratified the unsupported conclusion that I.A. possessed a knife." (*Id.* ¶ 135.)

14

As discussed, "[i]f there is a process on the books that appears to provide due process, . . . [P]laintiff cannot skip that process and use the federal courts as a means to get back what [s]he wants." *See McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir.1995). Plaintiff may well have felt that the BOE's decision was inadequate, unfair, and all around wrong, but she cannot now turn to the federal courts for relief when she failed to appeal the BOE's decision to the Commissioner.

That said, Plaintiff is correct that "[w]hen access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim." *Alvin*, 227 F.3d at 118. However, "since [Plaintiff] never invoked the second part of the processes available," namely, the appeal to the Commissioner, "which appear facially adequate, [the Court] will not hold that this step would have been unavailing (in procedure, if not in substance), absent concrete evidence supporting such a contention." *Id.* To the extent Plaintiff is arguing an appeal would have been futile because the record on appeal was without procedural safeguards and would be a record entirely "controlled" by School Defendants (ECF No. 75 at 8), the Third Circuit has instructed that "an allegation that initial stages of a process had been biased does not mean that the later processes will be biased as well." *Alvin*, 227 F.3d at 119 (citing *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1572 (3d Cir.1995)). Simply put, Plaintiff has failed to allege sufficiently that the available appellate procedure was a "sham." *Id.* at 118.

Moreover, while futility may excuse the failure to utilize supposedly remaining procedural steps, it is not enough to simply state that review of the BOE's decision would be "futile." (ECF No. 75 at 8 (citing ECF No. 64 ¶ 135).) This is precisely the type of conclusory allegation that *Twombly* and *Iqbal* forbid. *Errington v. City of Reading*, Civ. A. No. 21-00118, 2021 WL 3885177, at *9 (E.D. Pa. Aug. 31, 2021) ("[Plaintiff's] conclusory allegation that the appellate process would have been 'futile' is unavailing.").

15

Additionally, in a footnote, Plaintiff contends that *Patsy v. Board of Regents of the State of Florida* otherwise forecloses School Defendant's argument that "Plaintiff's failure to appeal to the Commissioner is independently fatal to her claim." (ECF No. 75 at 7 (citing 457 U.S. 496, 516 (1982)).) Plaintiff misreads *Patsy*. To be sure, the Supreme Court has long held that "exhaustion of state remedies 'is *not* a prerequisite to an action under § 1983.'" *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) (emphasis added in *Heck*) (quoting *Patsy*, 457 U.S. at 501). But, as Plaintiff acknowledges, the requirement that a plaintiff avail herself of adequate and available remedies to pursue a procedural due process claim is not a formal exhaustion argument. (ECF No. 75 at 7.) In *Alvin*, the Third Circuit has taught that "exhaustion *simpliciter* is analytically distinct from the requirement that the harm alleged has occurred." 227 F.3d at 116. There, the plaintiff "did not follow the prescribed processes" available to him. *Id.* at 118. Instead, he sent a "battery of letters to the right people in the wrong manner, and the wrong people in the right manner." *Id.* The Third Circuit empathized with him and acknowledged that he "may understandably have felt that he did all that he could, and that any other efforts would be useless," but the court nonetheless affirmed the district court's dismissal of the plaintiff's procedural due process claim. *Id.* at 118, 123.

Because Plaintiff has not alleged that she even attempted to avail herself of the available appellate procedure before the Commissioner, a procedural due process violation has not occurred. *Id.* ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.").

16

As such, Plaintiff's procedural due process claim fails to state a claim upon which relief may be granted.[12] Accordingly, Count 2 is **DISMISSED WITHOUT PREJUDICE**.[13]

### B.    False Arrest and Imprisonment (Count 3)

School Defendants ask the Court to dismiss Plaintiff's claim of a false arrest and imprisonment. First, School Defendants argue they were well within their authority to bring I.A. to the SRO office while a further search and investigation took place. (ECF No. 70-3 at 10.) Second, School Defendants contend that Plaintiff has not supplied sufficient allegations with regard to School Defendants directing or instigating I.A.'s arrest. (*Id.*) More specifically, School Defendants insist the allegations do not "specifically allege[] which school employees spoke to which police officers and the nature of their communication," and merely include "bare conclusions as to the degree or substance of coordination between [the] School Defendants" and the police. (*Id.* at 10–11.)

In opposition, Plaintiff argues that under the motion to dismiss standard, she has sufficiently pleaded "a wrongful deprivation of I.A.'s freedom." (ECF No. 75 at 10 (citing ECF

---

[12] School Defendants argue in the alternative that they are entitled to qualified immunity. (ECF 70-3 at 8–9.) Because School Defendants have failed to allege a procedural due process violation, the Court need not reach whether School Defendants are entitled to qualified immunity. *Caissie v. City of Cape May*, 619 F. Supp. 2d 110 (D.N.J. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[13] Plaintiff has represented that "[t]o the extent additional administrative procedures were available, . . . such remedies were futile . . . ." (ECF No. 64 ¶ 135.) To the Court, this sounds like an admission that Plaintiff did not in fact pursue the prescribed processes available to her. Assuming this is the correct reading of that factual assertion, the Court would be inclined to dismiss Count 2 with prejudice because amendment would therefore be futile. *See Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir.1998), *rev'd on other grounds*, 525 U.S. 459, (1999). However, given that the Court is required to read the SAC in the light most favorable to Plaintiff, the Court construes this statement as a characterization of the various additional administrative procedures as useless, not as an admission that Plaintiff did not avail herself of these procedures because she thought they were futile. *See Phillips*, 515 F.3d at 228.

No. 64 ¶¶ 43–58).) First, as to the initial seizure, Plaintiff contends that the seizure became a legally baseless custodial arrest. (*Id.*) Second, Plaintiff cites various allegations from the SAC, which she contends sufficiently show that School Defendants "directly participated" in urging I.A.'s formal arrest. (*Id.* at 10–11.)

School Defendants reply by comparing Plaintiff's allegations with the allegations in *Booker v. New Jersey* and arguing that Count 3 must be dismissed because Plaintiff has not "identified any singular person who allegedly committed any singular act which resulted in I.A.'s alleged false arrest or imprisonment." (ECF No. 76 at 6 (citing Civ. A. No. 04-4262, 2006 WL 8458223, at *3 (D.N.J. Jan. 10, 2006)).) According to School Defendants, Plaintiff has also failed to "identif[y] any instigation, request, or direction given by an individual School Defendant which resulted in I.A.'s imprisonment or arrest." (*Id.*)

A "plaintiff asserting a false arrest [or] false imprisonment claim need only prove that he or she was wrongfully deprived of freedom." *Bryant v. Camden Cnty. Police Dep't*, No. A-0896-18T4, 2020 WL 4134789, at *5 (N.J. Super. Ct. App. Div. July 21, 2020) (quoting *DelaCruz v. Borough of Hillsdale*, 838 A.2d 498, 512 (N.J. Super. Ct. App. Div. Jan. 6, 2004), *aff'd in part, rev'd in part,* 870 A.2d 259 (2005)). "False arrest and false imprisonment are different names for the same tort."[14] *Id.* (citing *Price v. Phillips*, 218 A.2d 167, 169 (N.J. Super. Ct. App. Div. 1966)).

Here, Plaintiff has cured some but not all of their previous deficiencies regarding this claim. *Heard*, 2025 WL 3017902 at *19 (dismissing Plaintiff's false arrest claim after finding "Plaintiff . . . only provided conclusory statements of School Defendants' involvement" in I.A.'s arrest and observing that "Plaintiff ha[d] not contested this argument").

The Court begins first by assessing the false arrest claim as it pertains to I.A.'s initial

---

[14] Going forward, the Court will simply refer to the tort as "false arrest."

seizure. Just as "a student called to the principal's office is detained against his or her will," *Booker*, 2006 WL 8458223, at *3, I.A.'s confinement in the "SRO office for several hours" while handcuffed is also a detention against I.A.'s will. (ECF No. 64 at 22.) While *Vernonia Sch Dist. 47J v. Acton* stands for the proposition that schools have a degree of control over a student's movement and location "[o]nce under the control of the school," 515 U.S. 646, 656 (1995), this degree of control is not without its constitutional limits. *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985).

School Defendants point out that in dismissing Plaintiff's false arrest claim, the Court did not factor in that (1) School Defendants detained I.A. in the SRO office for several hours without any legal justification to believe he had committed any wrong, and (2) that I.A. was engaged in purportedly lawful and routine behavior (ECF No. 70-3 at 10 (citing *Heard*, 2025 WL 3017902 at *19).) According to School Defendants, the Court "did not consider th[e]se allegations worthy of consideration." (*Id.*) That argument misreads the Court's October 28, 2025 Opinion and ignores the principle of party presentation.

When School Defendants initially moved to dismiss Plaintiff's false arrest claim, it argued that the claim was not plausible as alleged because Plaintiff alleged only conclusory statements of conspiracy to suggest that School Defendants had anything to do with I.A.'s arrest. (ECF No. 36-1 at 28 (citing ECF No. 35 ¶¶ 53, 87).) Critically, as the Court explained, "Plaintiff [did] not contest[] this argument." *Heard*, 2025 WL 3017902, at *19. As such, the Court focused on the allegations in paragraphs 53 and 87 and agreed that they were "conclusory" and dismissed the false arrest claim without prejudice. *Id.* As the Supreme Court of the United States recently made clear, it is emphatically not the role of this Court to raise arguments for the parties. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, No. 25-767, 608 U.S. ___, 2026 WL 1463466, at *2 (U.S. May 26, 2026)

(explaining it was an abuse of discretion for the lower court to address a "broader" argument instead of the "narrow" one presented by the parties).

This time around, aside from arguing that the Court previously discounted Plaintiff's allegations, School Defendants also contend that the seizure was within "the ambit of all school's ability to control the movement and location of students during school hours." (ECF No. 70-3 at 10.) Additionally, Plaintiff has chosen to respond to School Defendants' arguments seeking dismissal of the claim, arguing that it has sufficiently pleaded a false imprisonment and that it is possible for school officials like School Defendants to exceed their authority when controlling a student's movement. (ECF No. 75 at 10–11.) Accordingly, given the parties' arguments, the Court does what it did not do earlier—assess whether Plaintiff has sufficiently alleged that the initial detention of I.A. based on innocuous activity was without his will and without legal justification, *i.e.*, whether Plaintiff has stated a false arrest claim as to I.A.'s initial seizure. The Court finds Plaintiff has done so.

Unlike in *Booker*, where a student was called to the principal's office after being found with a knife in violation of school rules, 2006 WL 8458223, at * 3, here, "School Defendants . . . detained I.A. in the SRO office for several hours," having only been brought to the SRO office for merely "passing bags" in the school cafeteria. (ECF No. 64 ¶¶ 43, 46, 73, 142.) Simply put, having found a knife, the school officials in *Booker* were, of course, within their legal authority to detain the student, but that is not what Plaintiff has alleged happened here. Instead, read in the light most favorable to Plaintiff, School Defendants detained I.A. in the SRO office based on innocuous activity and did not find a knife even after searching him. (*Id.* ¶¶ 43, 45–46, 82.) As alleged, the initial seizure of I.A. provides a sufficient basis for Plaintiff's false arrest claim.

However, as to the allegations that School Defendants are liable for I.A.'s formal arrest the

Court agrees with School Defendants that the allegations are insufficient. (*See* ECF No. 70-3 at 10–11.) To argue that her SAC is well-pleaded, Plaintiff directs the Court to Paragraphs 54 and 56. (*Id.* at 11.) But these paragraphs repeatedly ascribe behavior to "one or more" of School Defendants. (ECF No. 64 ¶¶ 54, 56.) This constitutes an "impermissibly vague pleading [because] [it] leaves [the] [d]efendants and the Court to 'guess who did what to whom when.'" *Parrish v. Hudson Sch.*, Civ. A. No. 25-17986, 2026 WL 1328364, at *6 (D.N.J. May 13, 2026) (quoting *Foulke v. Township of Cherry Hill*, Civ. A. No. 23-2543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024)). To be sure, a "complaint is not impermissibly vague if, 'when read in the context of other specific allegations, it is sufficient to put a defendant on notice that the grouped allegation is brought, at least in part, against the specific defendant.'" *Id.* But, as pleaded, the individuals who make up School Defendants would not put sufficiently "on notice of the claims against each of them." *ATR Paper Inc. v. Bangkit (U.S.A.), Inc.*, Civ. A. No. 23-12696, 2024 WL 3518119, at *4 (D.N.J. July 24, 2024).

Accordingly, Count 3 is **DISMISSED WITHOUT PREJUDICE** only insofar as it is grounded in School Defendants' direction to arrest I.A. However, Count 3 **MAY PROCEED** insofar as it is grounded in School Defendants' initial seizure of I.A.

### C.    Malicious Prosecution (Count 4)

School Defendants again argue Plaintiff fails to allege that they initiated the criminal action against I.A., defeating the malicious prosecution claim. (ECF No. 70-3 at 11–12); *see Heard*, 2025 WL 3017902, at *19. Citing *Epperson v. Wal-Mart Stores, Inc.*, Plaintiff counters that the SAC alleges sufficient facts that, if proven true, show School Defendants encouraged the initiation of the criminal action, which is enough to satisfy the first element of a malicious prosecution claim.

21

(ECF No. 44 at 30 (citing 862 A.2d 1156, 1161 (N.J. Super. Ct. App. Div. 2004)).) Specifically, Plaintiff highlights the following:

> School Defendants summoned PPD officers to Plainfield High School; personally participated in the forcible removal of I.A. from the cafeteria; took I.A. to the SRO office, searched him, and confined him there in handcuffs for hours; regularly communicated with the PPD regarding how to handle the situation; and after the PPD concluded there was no basis to detain I.A. further and uncuffed him for release, . . . School Defendants "urged or encouraged" officers to formally arrest I.A. and pursue criminal charges to justify the prior detention and search.

(ECF No. 75 at 13 (citing and quoting ECF No. 64 ¶¶ 40, 43–47, 56).)

Notwithstanding the aforementioned allegations, School Defendants contend: (1) the facts here are distinguishable from the facts in *Epperson*; (2) Plaintiff has undermined her own allegations of supposed coordination between School Defendants and the police; and (3) Plaintiff's allegations regarding School Defendants' involvement in urging the police to pursue criminal charges are impermissibly vague and conclusory. (ECF No. 76 at 7–8.)

"Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009). "[E]ach element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." *Id.* (internal citation omitted). Under New Jersey law, the first element of malicious prosecution may be satisfied where there is "proof that defendant took 'some active part in instigating or encouraging the prosecution' or 'advis[ing] or assist[ing] another person to begin the proceeding.'" *Epperson v. Wal-Mart Stores, Inc.*, 862 A.2d 1156, 1161 (N.J. Super. Ct. App. Div. 2004) (quoting Prosser and Keeton, The Law of Torts § 119, at 872 (5th ed., 1984)). The

second element—malicious motivation—"is defined as the 'intentional doing of a wrongful act without just cause or excuse.'" *LoBiondo*, 970 A.2d at 1024–25 (quoting *Jobes v. Evangelista*, 849 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2004), *cert. denied*, 852 A.2d 193 (N.J. 2004). Courts "have permitted malice to be inferred from a finding that a defendant has neither probable cause nor a reasonable belief in probable cause." *Id.* at 1025.

Plaintiff's malicious prosecution claim against School Defendants fails because Plaintiff's allegations regarding School Defendants' involvement in urging the police to pursue criminal charges are impermissibly conclusory. Take, for instance, the following allegation: "After the [police] concluded there was no basis to detain I.A. further and uncuffed him for release, . . . School Defendants 'urged or encouraged' officers to formally arrest I.A. and pursue criminal charges to justify the prior detention and search." (ECF No. 75 at 13 (quoting ECF No. 64 ¶ 56).) Alleging School Defendants "urged or encouraged" the criminal charges that were eventually lodged against I.A. is exactly the kind of allegation that is not enough under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570 (2007)). In *Epperson*, the court concluded that the plaintiff's supervisor's attempt to persuade the plaintiff to confess was evidence of and an example of "actual[] participati[on]." 862 A.2d at 1161. Merely stating that School Defendants "urged or encouraged the responding officers to take I.A. into custody and pursue criminal charges" is little more than a recitation of the first element of a malicious prosecution claim. (ECF No. 64 ¶ 56.)

Accordingly, Count 4 is **DISMISSED WITHOUT PREJUDICE**.

### D.    Civil Conspiracy (Count 5)

To start, the Court reads Count 5 as alleging only a civil conspiracy under common law. *See, e.g., Schwester v. Borough of Far Hills*, Civ. A. No. 25-00007, 2026 WL 800690, at *3 (D.N.J. Mar. 23, 2026) (construing the plaintiff's claim as alleging a civil conspiracy under common law

23

where plaintiff had "assert[ed] that the [d]efendants conspired to violate [the] [p]laintiff's federal and state constitutional rights). While Plaintiff invites this Court to read and accept Count 5 as encompassing two causes of action, the Court declines the invitation for two reasons. (ECF No. 75 at 14.) First, it is axiomatic that a plaintiff may not amend her operative complaint via briefs in opposition to a motion to dismiss. *Scott v. Cohen*, 528 F. App'x 150, 152 (3d Cir. 2013). Second, the Court has already made clear to Plaintiff in addressing Plaintiff's earlier attempt to nest a civil conspiracy claim in another cause of action, that such an attempt constitutes an impermissible shotgun pleading. *Heard*, 2025 WL 3017902, at *3 n.6.

Next, the Court considers whether the New Jersey Tort Claims Act ("NJTCA") governs this claim. *See* N.J. Stat. Ann. § 59:1-1 *et seq*. The NJTCA prohibits claims against "a public entity or public employee" unless a plaintiff first provides notice of the claim to the public entity "within 90 days of accrual of the claim." *See* N.J. Stat. Ann. § 59:8-3, 8-7, 8-8. Generally, notice is not required for claims brought pursuant to the New Jersey Civil Rights Act (NJCRA). *See Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174–75 (3d Cir. 2006). However, when a plaintiff brings civil conspiracy claims under New Jersey common law that are predicated on federal or state constitutional violations, the Third Circuit has held that notice is required by the NJTCA. *Id.*

Here, Plaintiff asserts that School Defendants conspired to violate I.A.'s federal and state constitutional rights but does not allege that her claim is brought pursuant to the NJCRA. (ECF No. 64 ¶¶ 165–75.) Further, Plaintiff discusses the common law elements of a civil conspiracy without reference to the NJCRA. (*Id.*) Therefore, the Court construes Plaintiff's claim as alleging a civil conspiracy under common law and that the NJTCA notice requirement applies. *See Childress v. City of Orange Twp.*, Civ. A. No. 14-4354, 2018 WL 1378722, at *12 (D.N.J. Mar.

24

19, 2018) (applying state civil conspiracy law to plaintiff's claim of "civil conspiracy . . . to deprive [the p]laintiff of his constitutional rights" where the plaintiff's complaint did not specify whether the claim was brought pursuant to state or federal law and did not contest the defendants' assertion that New Jersey law applied).

Fatally, Plaintiff has not alleged when she served notice on School Defendants. Assuming that the filing of the initial Complaint in this matter constituted notice, Plaintiff's notice was filed well beyond the 90 days from the date his claim accrued. (*Compare* ECF No. 1 at 24 (marking November 5, 2024, as the date of filing), *with* ECF No. 64 ¶ 168 (indicating that the "agreement was formed during the events of November 9, 2022).) Because notice is a "jurisdictional precondition to filing suit" under the NJTCA which Plaintiff has not met, the Court must dismiss this claim. *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004) (quoting *Bonitsis v. N.J. Inst. of Tech.*, 833 A.2d 679, 685 (N.J. Super. Ct. App. Div. 2003)); *see Freeman v. Schaffer*, Civ. A. No. 18-11566, 2019 WL 2367083, at *8 (D.N.J. June 5, 2019) (dismissing claim of civil conspiracy to violate the plaintiff's constitutional rights where the plaintiff did not comply with the NJTCA notice requirements); *see also Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) ("Suits against a public officer in his individual capacity are subject to the notice provisions of the [NJ]TCA . . . .").

Accordingly, Count 5 is **DISMISSED WITHOUT PREJUDICE**.

E.    **Intentional Infliction of Emotional Distress ("IIED") (Count 6)**

School Defendants argue Plaintiff has failed to plead sufficient facts or basis in law for the Court to determine that School Defendants (1) are directly liable for IIED, (2) that, under New Jersey law, public entities can be held vicariously liable for an intentional tort like IIED, (3) that I.A. suffered emotional distress to the extent required to support an IIED claim, and (4) and that

25

Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams acted outrageously. (ECF No. 70-3 at 13–14.)

"Plaintiff acknowledges that public entities are immune from intentional torts including IIED." (ECF No. 75 at 18.) Nonetheless, Plaintiff contends "the appropriate disposition is partial dismissal" and points to various allegations in the SAC that support both the alleged severity of the harm I.A. suffered and the outrageousness of Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams's conduct. (*Id.* at 17–18.)

A claim for IIED consists of four elements. *See Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863–64 (N.J. 1988). First, the defendant must have either intended to do the act and produce emotional distress, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.* Courts employ a two-prong test to evaluate both the intent of the defendant to do the act and the intent to produce emotional distress. *Id.*

> [A] person acts recklessly in engaging in conduct if: (a) the person knows of the risk of harm created by the conduct or knows facts that make the risk obvious to another in the person's situation, and (b) the precaution that would eliminate or reduce the risk involves burdens that are so slight relative to the magnitude of the risk as to render the person's failure to adopt the precaution a demonstration of the person's indifference to the risk.

Restatement (Third) of Torts § 2 (A.L.I. 2010).

Second, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 544 A.2d at 863. Extreme and outrageous conduct is an elevated threshold under New Jersey law. *See Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 96 (N.J. Super. Ct. App. Div. 2001). Third, the conduct "must have been the proximate cause

26

of the plaintiff's emotional distress." *Buckley*, 544 A.2d at 863. Fourth, the emotional distress must be "so severe that no reasonable man could be expected to endure it." *Id.*

First, as discussed, Plaintiff "acknowledges that public entities are immune from intentional torts including IIED." (ECF No. 75 at 18 (citing *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016)).) Under New Jersey law, a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2–10. Moreover, "there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007). Accordingly, Plaintiff's IIED claim against the BOE and the District must be dismissed with prejudice.

Second, as to Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams—the alleged emotional distress was more than just the allegation that I.A. suffered "significant emotional distress, including anxiety, humiliation, and psychological trauma." (ECF No. 70-3 at 15 (quoting ECF No. 64 ¶ 181).) Plaintiff alleges that I.A. "required counseling with his Imam." (ECF No. 64 ¶ 184.) Moreover, unlike in *DeAngelis v. Hill*, where the New Jersey Supreme Court held that "testimony that [the plaintiff] was embarrassed, stressed, lost sleep, and subjected to practical jokes by fellow officers" was not enough "proof of emotional distress," 847 A.2d 1261, 1272 (N.J. 2004); here, Plaintiff has alleged more than mere practical jokes from peers. Instead, Plaintiff alleges that actions by Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams

27

led to "severe bullying from peers."[15] (ECF No. 64 ¶ 183.) Additionally, Plaintiff represents that

I.A. "experience[s] ongoing emotional effects." (*Id.* ¶ 184.); *cf. Buckley v. Trenton Saving Fund*

*Soc.*, 544 A.2d 857, 864–65 (N.J. 1988) (noting that a failure to lay out the "length or intensity"

of the mental distress hindered the plaintiff's argument that "no reasonable man could be expected

to endure" the mental distress). Simply put, at this juncture, Plaintiff has sufficiently pleaded

allegations that show that I.A.'s distress was sufficiently severe.

Additionally, while School Defendants argue that Plaintiff has supposedly "failed to allege

any facts, specific or general," as to how School Defendants "acted intentionally or recklessly,"

the SAC tells a different story. (ECF No. 70-3 at 16.) To support Count 6, Plaintiff "repeats and

incorporates by reference each of the foregoing paragraphs as if fully set forth herein." (ECF No.

64 ¶ 176.) That includes, for instance, the following allegation: "School Defendants . . . detained

I.A.," a minor who "had just turned fifteen (15) years old," "at the SRO office for several hours,"

even though all I.A. had been doing was "passing bags." (*Id.* ¶¶ 10, 43, 46.) As the Court has

---

[15] As the Court reads School Defendants' argument that the Court should disregard Plaintiff's allegation that "I.A. suffered severe bullying from peers" because public entities are not liable for injuries by private third-parties, the Court understands this argument as one in support of dismissal of Count 6 against the BOE and the District, not the individuals who make up School Defendants. (ECF No. 76 at 11 (citing ECF No. 64 ¶ 183).) Accordingly, the Court need not address this argument, given the Court's dismissal of Count 6 against the BOE and the District on other grounds.

To the extent School Defendants contend the Court cannot consider the severe bullying I.A. suffered because it came at the hands of third parties, School Defendants are mistaken. (ECF No. 64 ¶ 183.) In *DeAngelis*, the New Jersey Supreme Court considered the lack of a "suggest[ion] that the incident [at issue] seriously affected his relationship with coworkers or prevented him from performing his job or other daily routines" and concluded that DeAngelis "did not suffer the kind of severe or debilitating emotional distress that would entitle him to damages for [IIED]." 847 A.2d at 1272. Conversely, then, where the SAC includes a factual nexus between Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams's conduct and "severe bullying from peers" that followed said conduct, the Court can and does weigh this factual nexus in favor of finding that I.A. suffered severe distress.

already explained, this behavior is sufficiently outrageous and extreme for purposes of an IIED claim. *Heard*, 2025 WL 3017902, at \*21–22; *see also In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991) ("The . . . law of the case [doctrine] dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation.'" (quoting *Devex Corp. v. General Motors Corp.*, 857 F.2d 197, 199 (3d Cir.1988)).) Therefore, the IIED claim is sufficiently pleaded against Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams.

Accordingly, Count 6 as to the BOE and the District is **DISMISSED WITH PREJUDICE** as amendment would be futile. *Smith*, 139 F.3d at 190. However, Count 6 as to the individual School Defendants—Superintendent Hasan, Principal Stansbury, Vice Principal Evans, Vice Principal Fusco, and Director Williams—**MAY PROCEED**.

## IV.    CONCLUSION

For the reasons set forth above, School Defendants' motion to dismiss (ECF No. 70) is **GRANTED IN PART** and **DENIED IN PART**. Additionally, pursuant to Rule 15(a)(2), Plaintiff is **GRANTED** one final opportunity to amend her SAC, which is limited to curing the deficiencies addressed herein.[16] An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: July 22, 2026

---

[16] Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires*." In re Burlington Coat Factory*, 114 F.3d at 1434 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996)).